UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM SPECTOR

v.                                                                    CASE NO. 3:03CV 253 (JBA)

EQUIFAX INFORMATION SERVICES, LLC            January 15, 2004

PLAINTIFF'S MOTION FOR DISCOVERY ORDERS

Plaintiff moves for an extension of time for his discovery only, and for appropriate orders, including an order that Equifax pay for fees, costs, and expenses involved in future discovery. This is plaintiff's first request for an extension; defendant objects.

For cause, in the last month, Equifax has changed its litigation posture substantially. It recently located and provided (on Dec. 10 and Dec. 31) plaintiff's two requests for disclosure of his file, after persistently denying their receipt. E.g. Doc. No. 30. On January 9, 2004, Equifax disclaimed crucial "offline procedure" documents it produced only after a discovery battle – documents which implicate defense counsel in wrongdoing in this and all other litigated matters. It has refused to stipulate to facts (some of which also implicate defense counsel) as contemplated by the Court and the parties at a conference of October 21, 2003 to facilitate judgment as a matter of law. The facts and documents to which it refused to stipulate are attached. As suggested by the Court, Equifax has produced an affidavit of John Friedline (it turns out that he was entirely uninvolved, despite the documentation provided for the offline procedure) but has so far refused to produce the affidavit of J. Anthony Love, who was involved. Equifax has changed its discovery response to the off-line code three times (from 229 to Q to 6 – in the latest draft of the stipulation)

and counsel has made unsubstantiated claims as to how the code works. Equifax has not admitted self-evident facts (see attached) necessitating plaintiff to engage an expert witness.

Due to defendant's refusal to stipulate and significant changes of position, it now appears that plaintiff needs the training and operational material for ACS in Jamaica; depositions as to the offline policy and procedures if they are not represented by the now-disclaimed documents, including how the offline procedures affect promotional inquiries and account reviews and the failure rate of the procedure for responding to consumer disclosure requests when a file is offline (100% in this case); depositions as to counsel's role in the plaintiff's, consumers' and users' inquiries once requests are in fact received; and needs to locate and retain an expert witness.

Pursuant to Fed. R. Civ. P. 37(b)(2) or (d), plaintiff moves for appropriate orders, including the entry of a default against defendant, and an order that the allegations of the complaint shall be taken to be established against the defendant.

                                                  THE PLAINTIFF

ORAL ARGUMENT NOT REQUESTED

                                                  BY_____
                                        JOANNE S. FAULKNER ct04137
                                         123 Avon Street
                                         New Haven, CT 06511
                                         (203) 772-0395

I. Aside from its after-the-last-minute retraction of the admission that certain documents represent its offline policies, <u>has refused to stipulate</u> as follows, necessitating discovery:

1.	Account reviews do not appear on any credit reports sent to Equifax's creditor subscribers.

2.	Equifax does not disclose account reviews to creditors or potential creditors, but only to the consumer.

3.	Shortly after this notification [of a user's inquiry], the request and the consumer's credit file is relayed to Equifax's outside counsel. Here, because J. Anthony Love was handling the case, the Gulf and Citizens' requests were forwarded to him.

4.	When defendant takes a consumer's credit file off-line and the consumer makes a request for his file, Equifax's practice is to send the request and the file to its outside counsel.

5.	The fact that plaintiff's file was off-line caused Gulf to send the adverse action letter to plaintiff.

6.	On December 10, 2003, Equifax discovered plaintiff's original May 7, 2003, request, which had been in the litigation file of J. Anthony Love, defense counsel.

7.	If the creditor or potential creditor follows up in an effort to obtain the credit report, it is advised that the consumer's file is off-line. On occasion, including upon receipt of a consumer's lawsuit, defendant tracks and monitors the consumer. Copy of policy "New Litigation" and "New Demands" attached.

8.	Within 24 hours of the request, every request or attempted request for the consumer's file, whether by a creditor, potential creditor, or consumer, is supposed to be brought to the attention of John Friedline, outside counsel. Copy of policy "VIP Report" attached. Here, because J. Anthony Love was handling the case, the request was forwarded to him.

9.	A copy of the consumer's report for each attempt is placed in the folder of the consumer and a copy is supposed to be forwarded to John Friedline for review. Here, because J. Anthony Love was handling the case, the report was forwarded to him.

10.	When defendant takes a consumer's credit file off-line, the Q code appears when an operator tries to respond to a consumer's request for his own file.

11.	When defendant takes a consumer's credit file off-line, the consumer's request for his file and his credit file are forwarded to Equifax's outside counsel who arranges to send the report to the consumer or the consumer's attorney.

12.     Defendant does not put a consumer's credit report back on line after it is sued unless instructed by its attorney to do so. Copy of policy "Closed litigation" and "Closed demands" attached.

13.     Defendant erases all legal inquiries from the consumer's file before it is put back on line.

14.     A user is required to give the consumer an "adverse action" notice if a consumer reporting agency returns a no-file response. . FTC Official Staff Commentary on the FCRA, 16 C.F.R. §615-11 (2003) at p.513.

15.     Equifax received plaintiff's letter of December 12, 2002, but chose not to provide plaintiff's consumer disclosure to him because he had filed a pending lawsuit against Equifax.

16.     Equifax found plaintiff's letter of December 12, 2002, in its own file, after December 16, 2003.

II. Equifax has requested plaintiff to admit the unsubstantiated and counterintuitive claim that when a file is offline, even though Equifax operators cannot bring up the file, and the users cannot get the file, outsiders doing account reviews and promotional inquiries get the file.

III. <u>Equifax has refused to admit</u> the following, requiring plaintiff to engage an expert witness to testify to the obvious:

7.     There is an adverse impact on a person's ability to obtain credit if a user receives a no-file or under review or error message because a consumer's file is off-line.

8.     There is an adverse impact on a person's credit score if a user receives a no-file or under review or error message because a consumer's file is off-line.

12.     There is a negative impact on a credit score when a tradeline indicates a consumer dispute.

13.     There is a negative impact on a credit score when a consumer has a closed credit card account but it is listed as open.

This is to certify that the foregoing and attached was mailed on January 14, 2004, postage prepaid, to:

J. Anthony Love
Kilpatrick Stockton
1100 Peachtree St #2800
Atlanta GA 30309-4530

_____
Joanne S. Faulkner