IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM SPECTOR, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:03CV00253 (JBA) |
| | ) | |
| v. | ) | |
| | ) | |
| EQUIFAX INFORMATION SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | JANUARY 15, 2004 |

**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S LOCAL RULE 56(a)1 STATEMENT**

COMES NOW Defendant Equifax Information Services LLC ("Equifax"), by Counsel, and, in support of its Motion for Summary Judgment, hereby files its Local Rule 56(a)1 Statement[1] as follows:

1. As a consumer reporting agency, Equifax accepts information regarding a consumer's credit only from those sources of credit information, including banks, creditors and merchants, which, either on the basis of Equifax's prior experience, or because of the particular source's reputation, are determined by Equifax to be reasonably reliable sources of information. (Affidavit of Alicia Fluellen, hereinafter referred to as the "Fluellen Affidavit", para. 2).

2. Equifax compiles this information into consumer reports that can be distributed to users of information who have contracted with Equifax. (*Id.*)

---

[1] Defendant Equifax is providing its Local Rule 56(a)1 Statement to supplement the Joint Statement of Facts filed by both parties. In order to avoid duplication, Equifax has attempted not to repeat the facts contained in the Joint Statement here.

3.  Equifax maintains over 250 million files containing information related to the creditworthiness of consumers, including a file for Plaintiff. (*Id.*).

4.  These files are maintained in a database and ordinarily available online. (*Id*).

5.  Generally, in the ordinary course of business, Equifax releases a particular consumer's file in two circumstances: (1) to an existing or potential creditor of the consumer and (2) to the consumer himself pursuant to the federal Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq.* and various similar state statutes. In the first example, the file released is called a "credit report" or "consumer report." In the second example, the file released is called a "consumer disclosure." (Fluellen Affidavit, para. 3).

6.  When a consumer files a lawsuit against Equifax, it initiates certain policies and procedures that are specific to files that are involved in litigation. One such policy is to take the file "offline". When a file is offline, it still exists within Equifax's database, but is unavailable electronically to potential creditors and even Equifax personnel in charge of responding to routine consumer requests for a disclosure. If a potential creditor requests a file that is offline, it will receive a message stating that the file is unavailable and inviting the credit grantor to contact Equifax. Equifax does this to protect itself, its customers and consumers from harm and/or further damages or suits resulting from providing credit reports that contain disputed and possibly inaccurate information as well as, in some instances, the concern over possible identity theft. (Fluellen Affidavit, para. 5).

7.  Equifax also has a policy concerning requests by consumers for copies of their credit files when their file is involved in litigation. When Equifax receives such a request, it forwards the request to its outside counsel to handle. (Fluellen Affidavit, para. 6).

2

8. Plaintiff filed for personal bankruptcy in March of 2001. (Spector Depo., p. 16, lines 19 - 21).

9. As stated in the Joint Statement of Facts, Plaintiff filed a prior lawsuit against Equifax ("Spector I"). While Spector I was pending, Plaintiff and his wife went to Ty Subaru to shop for a new car. (Spector Depo., p. 13, lines 15 - 24). They found a used car they liked, filled out a joint credit application and went home. (Spector Depo., p. 14, lines 2 -16). They later received a call in which they were informed that the dealership had submitted their credit application to a number of lenders and it was "denied by most of them." (Spector Depo., p. 15, lines 5 -14). Plaintiff claims that he and his wife each received some denial letters, but Plaintiff "[does not] remember which ones" (i.e., which creditors). (Spector Depo., p. 15, lines 15 - 25).

10. Plaintiff's application was submitted to Citizen's Bank. Citizen's Bank was able to obtain Plaintiff's credit report from Experian. Plaintiff's bankruptcy was shown on that report. Citizen's denied Plaintiff because of the bankruptcy on his file. (*See* Citizen's documents attached as Exhibit "C" to Memorandum in Support of Summary Judgment).

11. No later than the end of November, three days after Citizens' tried to pull Plaintiff's Equifax credit report, Plaintiff obtained financing through another company and bought the car. (Spector Depo., p. 18, lines 14 - 16).

11. Although Spector I was still pending, Plaintiff made the December 12, 2002 request for his credit file himself rather than going through his Counsel, Ms. Faulkner, who also represented him in that case. He wanted a copy of his credit report at that time because, as mentioned above, he did not believe that having a bankruptcy on his credit file "would have been that damaging." (Spector Depo., p. 23, lines 24 - 25 through p. 24, lines 1 - 4).

3

12. Citizen's Bank never contacted Equifax to request a copy of the credit file following its receipt of this notification, nor did Plaintiff ever contact Equifax to ask that Citizen's Bank be provided a copy of his report. (Fluellen Affidavit, para. 7 ).

13. Equifax received Plaintiff's request for a credit file. (Fluellen Affidavit, para. 6). Since Plaintiff's file was offline, the request was forwarded to Equifax's Office of Consumer Affairs. (*Id.*) Under its policy, the request should then have been forwarded to Equifax's outside Counsel so that he could review the request and arrange for a copy to be sent to Plaintiff. (*Id.*) Here, the December 12, 2002, request somehow never made its way to Equifax's outside Counsel.

14. During the pendency of Spector I, on January 9, 2003, Equifax's Counsel received an e-mail from Plaintiff's Counsel advising him that she had a new "slam dunk" claim against Equifax because Plaintiff had been "denied credit based on an Equifax report" (a claim that was never supported) and because his "request for a copy of his report had been ignored." (Affidavit of J. Anthony Love, hereinafter referred to as the "Love Affidavit", para. 2). She did not ask him to provide her or Plaintiff with a copy of his credit file. (*Id.*) Rather, she offered to include those claims in a settlement of Spector I or to bring a separate lawsuit based upon them. (*Id.*) Equifax declined to pay the amount she was seeking to settle the Spector II claims. (*Id.*).

15. On January 13, Equifax's Counsel responded to Plaintiff's Counsel's January 9 e-mail. Consistent with Equifax policies, he told her as follows:

"When did he ask for his credit report? Give me a break. You know that all you have to do is ask me and I will send you one. Do you want me to send you one?"

Equifax's Counsel did not receive a reply to this e-mail. (Love Affidavit, para. 3).

4

16.     Thereafter, Equifax's Counsel learned from the Office of Consumer Affairs at Equifax that it had no record of a disclosure request from Plaintiff, although it has since been discovered that such a request was received by another department on or before December 20. (Love Affidavit, para 4).  Under Equifax's standard procedures with respect to the "offline" files of Plaintiffs, the Office of Consumer Affairs should have been made aware of Plaintiff's request and should have forwarded it to Equifax's Counsel for handling. (*Id.*).

17.     Then, on February 3, 2003, Equifax's Counsel received another e-mail from Plaintiff's Counsel again inquiring whether Equifax would settle "all outstanding claims" of Plaintiff. (Love Affidavit, para. 5).  Again, Plaintiff's Counsel did not ask for a copy of his credit file, instead threatening to file her "slam-dunk suit" within a few days. (*Id.*)  Equifax's Counsel replied the same day, telling Plaintiff's Counsel that Equifax had "no record" of her client's request (which he believed to be true) and pointing out her failure to let him know when and how Plaintiff made his request. (*Id.*)  Equifax's Counsel received no response to his February 3 e-mail.  Plaintiff's Counsel made good on her threat, however, by filing Spector II.

18.     Spector I was settled on March 4, 2003. ("Love Affidavit", para. 7).  One of the terms of the settlement agreement was that Equifax would provide Plaintiff with a current copy of his credit file and, if he had any further disputes, he would advise Equifax accordingly. (*Id.*). On March 10, 2003, Equifax's Counsel sent Plaintiff's Counsel a current copy of Plaintiff's credit file by overnight mail. (Love Affidavit, para. 8).  On March 12, 2003, Plaintiff's Counsel sent Equifax's Counsel an e-mail with several disputes concerning the contents of the March 7, 2003 report that he had provided to her. (Love Affidavit, para. 9).  Equifax made the requested changes and sent Plaintiff's Counsel an updated copy of the report on March 17, 2003. (Love

5

Affidavit, para. 10). Equifax's Counsel heard nothing from Plaintiff's Counsel about any inaccuracies in this updated version of his report. (*Id.*)

19. The Court dismissed Spector I on March 26, 2003. (Love Affidavit, para. 11). Only the Spector I claims were settled. (Love Affidavit, para. 12).

20. Sometime in March, 2003, after filing Spector II, Plaintiff went to a Gulf Oil gas station and attempted to purchase gas using an old Gulf Oil card at a "pay at the pump" location. (Spector Depo., p. 32, lines 22 –25 through p. 33, lines 1 – 17). The card was declined, and he used another credit card to pay for the gas. (*Id.*). This was the first time he had ever used the Gulf Card even though he had it for "many years." (*Id.*)

21. When Plaintiff was unable to use the card, he contacted Gulf Oil to inquire further and was informed by its representative that the account was closed. (Spector Depo., p. 33, lines 20 - 24).

22. On April 5, a Gulf representative apparently told him in a telephone conversation that his account had been closed several years ago at his request. (*See* letter from Gulf to Plaintiff, attached hereto as Exhibit E).

23. On April 10, he wrote Gulf, denied that he had made such a request, and asked that the account be re-opened and his daughter be added as an authorized user on it. Gulf had already closed the account before Plaintiff tried to use it at the local gas station.
(*See* letter from Plaintiff to Gulf, attached as Exhibit F to Equifax's Memorandum in Support of Motion for Summary Judgment).

24. Gulf Oil electronically requested copies of Plaintiff's credit file on April 7, 2003 (after the Plaintiff's telephone call), and April 18, 2003. (Fluellen Affidavit, para. 8).

6

25.     Plaintiff's file was offline at the time of these requests, and Gulf received a notification similar to the one received by Citizen's Bank. (*Id.*).

26.     Gulf never contacted Equifax to request a copy of Plaintiff's file following its receipt of these notifications. (*Id.*). Nevertheless, Plaintiff's Gulf account was reactivated/reopened "about a month later." (Spector Depo., p. 32, lines 19 - 21; p. 35, lines 4 - 5). Plaintiff has used the card since with no problems. (Spector Depo., p. 35, lines 16 - 19).

27.     Although Equifax's Counsel does not know when, this letter eventually made its way to him and he instructed Equifax to send the disclosure directly to Mr. Spector. (Love Affidavit, para. 13). Equifax did so on or about July 16, 2003. (*Id.*) During the entire time between May 7 and July 15, while Spector II was pending, Equifax's Counsel did not receive a single request from Plaintiff's Counsel to send her or Plaintiff a copy of his credit file. (*Id.*) Equifax's Counsel was not aware of Plaintiff's second request for a disclosure until he received it from Equifax. (*Id.*) A copy of Plaintiff's credit file was sent directly to him on July 16, 2003. (Fluellen Affidavit, para 10).

28.     In late August, Plaintiff's Counsel brought to Equifax's Counsel's attention some additional items on his July 16 report that he claimed were inaccurate. (Love Affidavit, para. 14). (Interestingly, several of the items disputed at this point were also on his March reports, but not disputed at that time.) (*Id.*) Equifax's Counsel forwarded these disputes directly to Equifax for handling. (*Id.*). After investigating Plaintiff's additional disputes, Equifax sent him another copy of his report in September, 2003. (Love Affidavit, para. 15).

7

29. Equifax never acted with malice or intention to harm Plaintiff in this matter. (Fluellen Affidavit, para. 11).

>Respectfully submitted,
>
>EQUIFAX INFORMATION
>SERVICES, LLC
>
>By _____
>Eric D. Daniels (ct 01582)
>Jason M. Kuselias (ct 20293)
>ROBINSON & COLE LLP
>280 Trumbull Street
>One Commercial Plaza
>Hartford, CT 06103-3697
>E-mail: edaniels@rc.com
>E-mail: jkuselias@rc.com
>Tel. No. (860) 275-8200
>Fax No. (860) 275-8299
>
>and, of counsel
>
>J. Anthony Love, Esq.
>Georgia Bar No. 459155
>KILPATRICK STOCKTON LLP
>1100 Peachtree Street, Suite 2800
>Atlanta, Georgia 30309
>E-mail: ToLove@kilstock.com
>Tel. No. (404) 815-6500

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing has been sent via Federal Express, on the 15th day of January, 2004 to:

        Attorney Joanne S. Faulkner
        123 Avon Street
        New Haven, CT  06511-2422

                                              Jason M. Kuselias