UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

WILLIAM SPECTOR

v.                                                CASE NO. 3:03CV 253 (JBA)

EQUIFAX INFORMATION SERVICES, LLC            February 17, 2004

PLAINTIFF'S OPPOSITION TO EQUIFAX MOTION FOR SUMMARY JUDGMENT

Based on defendant's own papers, particularly the Love Affidavit (Def. Ex. D) and the Supp. Love Aff. (Doc. No. 73), Equifax has admitted, not only negligence, but reckless indifference to Equifax's obligations under the Fair Credit Reporting Act, including its mandate to give plaintiff a copy of his consumer disclosure on request. Summary judgment may be granted to plaintiff on defendant's motion in these circumstances.[1]

I.  ON AT LEAST FIVE OCCASIONS, EQUIFAX DID NOT GIVE PLAINTIFF A COPY OF HIS DISCLOSURE DESPITE NOTICE OF HIS REQUESTS

Equifax spends little effort addressing the undisputed fact that it did not give plaintiff his disclosure upon his request in either December 2002 or May, 2003, as mandated by the FCRA. Def. Mem. 20-23. Its attorney's Affidavits now admit that Equifax also did not provide the disclosures on other occasions, even after specific and repeated notice that plaintiff's own requests had not been fulfilled. Equifax (through counsel) admittedly ignored notices of Jan 9, 2003, and Feb. 3, 2003, that plaintiff had requested but not received his credit file in December. Equifax did not send plaintiff his credit file despite those follow-up notices. Nor did Equifax send plaintiff his file in response to a very specific request (through counsel) of Feb. 13, 2003. That Equifax by chance ultimately provided him disclosures is no

---

[1] New England Health Care Employees Union v. Mt. Sinai Hosp., 65 F.3d 1024, 1029 (2d Cir. 1995); Coach Leatherware Co. v. AnnTaylor, Inc., 933 F.2d 162 (2d Cir. 1991).

excuse, since the disclosures were not timely provided to the consumer upon his requests as mandated by the FCRA.

Equifax admits repeated notice on January 9, 2003, and Feb. 3, 2003, that plaintiff had requested his file in December and not received it. Love Affs. Ex. D ¶¶ 2, 5; Doc. No. 73 ¶¶ 3, 6. Yet, Equifax still did not provide plaintiff his file.

Plaintiff's counsel directly repeated plaintiff's request for his file yet again, on Feb. 13, 2003. "Please see that a copy of his credit report is sent to him, not to you or to me." Love Aff. Doc. No. 73 ¶ 7. This repeat of plaintiff's request also went unheeded.

With regard to plaintiff's May, 2003 request for his file, Equifax's attorney has twice sworn under oath that "[T]his letter eventually made its way to me and I instructed Equifax to send the disclosure directly to Mr. Spector. Equifax did so on or about July 16, 2003." Love Affs. Ex. d ¶13; Doc. No. 73 ¶ 14. Contrary to his assertions, as of August 29, 2003, Equifax was still denying receipt of the May 2003 request. Answer to Amended Complaint 8, 12 Doc. No. 30 (filed August 29, 2003). Even later, as of October 1, 2003, Equifax was still denying receipt of the May, 2003 request. Response to Int. 20, signed by Mr. Love, attached. Mr. Love finally produced a copy of the May request on December 10, 2003. Doc. No. 61, ¶ 20. Plaintiff is dismayed that the attorney's affidavits are inconsistent with the pleadings and disclosure he signed, and has filed a Motion to Strike part of his affidavits.

Compounding its repeated failure to provide disclosures to plaintiff, Equifax admits it willingly also would have violated the FCRA by sending the plaintiff's file to his counsel – even though plaintiff's counsel had no permissible purpose! Equifax's attorney's (now retracted) claim was that if plaintiff's counsel had responded to his Jan. 13 offer to send plaintiff's file to his counsel, Equifax would have sent the disclosure to plaintiff's counsel.

2

Love Aff. Ex. D ¶ 3 and Ex. C thereto.[2] Mr. Love has now retracted that portion of his original affidavit and admits that he did get a response: "[Y]ou are not entitled to get it [plaintiffs' report] or see it. Neither am I." Love Aff. Doc. No. 73 ¶4. There was and is no permissible basis for either Equifax's or plaintiff's counsel to receive a copy of plaintiff's disclosure, yet Equifax was willing to disregard the express limitations of the FCRA, 15 U.S.C. § §1681b (permissible purpose for disclosing private and confidential consumer files).

Equifax did provide disclosures in mid-March of 2003 as part of the settlement negotiations in the earlier case, not in response to plaintiff's December request, which it denied receiving, or counsel's February repeat request. As a condition of settlement of the earlier case, Equifax provided the mid-March disclosures to defense counsel[3] who forwarded it to plaintiff's counsel in furtherance of Equifax's offline procedures (Fluellen Aff. ¶ 9; Love Affs. Ex D ¶ 7-11; Doc. No. 73 ¶¶ 8-12; Stipulation of Facts ¶ 20; Local Rule 56(a)1 Statement ¶ 18). The March "disclosures" were Equifax's precondition to settling plaintiff's earlier case. Def. Mem. at 9. They were not intended as a response to plaintiff's December or February requests. Because they were provided for settlement reasons, the March disclosures are not only irrelevant to Equifax's noncompliance with the FCRA's mandatory disclosure provisions, but are inadmissible as part of settlement negotiations.

Equifax did provide a disclosure in July, 2003, but not in response to plaintiff's May, 2003 certified mail request: Until mid-December, Equifax persistently claimed it had never received the May 2003 request. Answer to Amended Complaint ¶¶11, 12, Doc. No. 30, filed

---

[2] Ex. C to the Love Aff. is not one of the tabbed Exhibits. The Exhibits to the Love Aff. are behind tab C in plaintiff's copy, rather than behind tab D.
[3] Defense counsel had no permissible purpose to obtain or see plaintiff's credit report. 15 U.S.C. § §1681b ("under the following circumstances and no other").

3

August 29, 2003; Response to Interrogatory 19, 20, signed by Mr. Love on October 1, 2003 (copy attached). At the July 10 settlement conference, Plaintiff mentioned to Equifax his failure to receive any response to his May 7 disclosure request, which apparently triggered the July 16 disclosure – over two months after plaintiff's request.

Equifax acted intentionally and in accord with its admitted plan and policy to take a consumer's file offline when it is sued. Equifax and its counsel ignored repeated notices or requests to send his consumer file to plaintiff. This was not "a simple mistake." Equifax's repeated failures show, at the very least, that its procedures are not reasonable as a matter of law. Repeated failure to send plaintiff his credit report falls well below the standards required by the FCRA. It rises to the level of reckless indifference for the purpose of punitive damages. McMillan v. Equifax Credit Inf. Services, Inc., 170 F. Supp. 2d 278 (D. Conn. 2001); Dalton v. Capital Associated Industries, Inc., 257 F.3d 409, 418 (4th Cir. 2001) (defendant was on notice of error but disregarded it); Donovan v. Carls Drug Co., 703 F.2d 650, 652 (2d Cir. 1983) (an act is willful when the entity knows it is subject to a statute and its practices do not conform to the statute, except when Congress enacts a good faith defense).

## II. PLAINTIFF HAS BEEN DAMAGED

Equifax attacks the damage issue first and extensively in its brief. Def. Mem. 12-20. That attack is consistent with its insouciance towards compliance with the FCRA. In effect, Equifax says, "So what if we didn't comply?" and attacks the victim. Admittedly, plaintiff had some expense – he sent the May request by certified mail since Equifax claimed that the December request had never arrived. That satisfies the economic damages requirement of the FRCA, and the "ascertainable loss" requirement of CUTPA. No one can predict how the jury

4

will value plaintiff's frustration at having his legal right to a copy of his report repeatedly ignored.

Most objectionable is Equifax's insistence that Plaintiff's counsel could have resolved plaintiff's anxiety by requesting his disclosure. Def. Mem. at 19. She did. It was still ignored. Doc. No. 73 ¶ 7.

Under Casella v. Equifax Credit Infor. Serv., 56 F.3d 469, 474 (2d Cir. 1995) "'actual damages' may include humiliation and mental distress, even in the absence of out-of-pocket expenses." Plaintiff also submits that no reasonable jury could refuse to award punitive damages on the basis of defendant's, and its counsel's, repeated noncompliance with industry and Congressional standards.

Contrary to Def. Mem. at 23, the offline status was the direct cause of the "delays" – actually noncompliance -- because Equifax adopted a complex forwarding procedure, which has no safeguards to assure delivery of the consumer disclosure mandated by two sections of the FCRA. In the broader view of the online procedures in general, Equifax harms the consumer and undermines the free and fair functioning of the American economy when it takes a consumer's file offline. The consumer can't correct his report – and a creditor-subscriber cannot obtain information to decide whether to grant credit. Neither Gulf nor Citizen's could get plaintiff's credit report in the normal electronic fashion.

Equifax does not tell the subscriber why the report is unavailable. It says it has a report and you, Mr. Subscriber, cannot get it instantaneously per your contract, but have to go through hoops. With no report, the user can assume any number of things: the consumer has no credit history; the consumer's report must be negative; the file has been taken off line because the consumer is an identity thief; the consumer is the victim of fraud or theft of

5

identity. Whatever surmises there may be, they are all negative. No creditor needs the hassle or complication of chasing after a credit report; there are plenty of other consumers in the marketplace: This consumer is Trouble.

Equifax does not protect the consumer by taking the file offline. In plaintiff's view, it affirmatively harms the consumer in retaliation for being sued. The offline procedures contemplate disclosing the consumer's request for his file, made independently of litigation, to Equifax's attorney, who then illegally offers the file to the consumer's attorney. Fluellen Aff. 5; Love Aff. Ex. D 3. For years, Equifax and its counsel have conspired to retaliate against consumers who sue Equifax by taking their credit files offline; Equifax reports any inquiries to the attorneys; refuses to provide a consumer disclosure unless allowed by the attorney; and puts the file back online only when the attorney instructs Equifax to do so. The longstanding joint action of taking a consumer offline, intentionally resulting in prevention of credit reports and foreseeable harm to the consumer, is justifiably considered as reprehensible retaliatory action. It is more reprehensible when outside counsel knowingly participate in the retaliation, and in the cover-up for the consequential noncompliance.

## IV EQUIFAX IMPROPERLY SUBMITTED INADMISSIBLE MATERIAL

Contrary to Fed. R. Civ. P. 56(e), Defendant's motion and supporting papers rely extensively on inadmissible settlement negotiations, in this matter and in a prior matter. Fed. R. Evid. 408 specifies "evidence of conduct or statements made in compromise negotiations is likewise not admissible." Plaintiff requests the Court to disregard reference to settlement discussions, except to the extent that they reveal that Equifax was specifically and repeatedly put on notice of the failure to comply with the mandatory consumer disclosure requirements of the FCRA, and yet did not comply. In these circumstances, punitive damages are in order.

Dalton v. Capital Associated Industries, Inc., 257 F.3d 409, 418 (4th Cir. 2001) (defendant was on notice of error but disregarded it).

## CONCLUSION

By intentionally taking plaintiff's file offline because he had sued Equifax (albeit not for errors in his report), Equifax both prevented plaintiff from seeing whether his report needed corrections, and virtually blackballed his participation in the credit economy. Summary judgment should enter for plaintiff on Equifax's multiple violations of the mandatory disclosure requirements of §§ 1681g(a) and §1681j. The amount of actual and punitive damages and the reasonableness of the offline procedure are jury questions.

THE PLAINTIFF

BY /s/Joanne S. Faulkner
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net

This is to certify that the foregoing and attached was mailed on February 17, 2004, postage prepaid, to:

J. Anthony Love
Kilpatrick Stockton
1100 Peachtree St #2800
Atlanta GA 30309-4530

/s/Joanne S. Faulkner
Joanne S. Faulkner

7

INTERROGATORY NO. 19:

Set forth every step taken with regard to plaintiff's letter received by defendant on May 10, 2003, identifying the job description and employer of each person handling the letter, and each location (whether physical or electronic) of the letter each day on and after May 10, 2003.

RESPONSE: Defendant Equifax does not have a record of receiving the subject letter.

INTERROGATORY NO. 20:

Provide every reason why Equifax did not respond to the plaintiff's letter received by defendant on May 10, 2003, and identify each person made any decisions about handling the letter.

RESPONSE: Defendant Equifax does not have a record of receiving the subject letter.

This 1st day of October, 2003.

Respectfully submitted,

EQUIFAX INFORMATION
SERVICES LLC

By: _____
J. Anthony Love, Esq. ct20053
Georgia Bar No. 459155
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500

Eric D. Daniels, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597

ATLLIB01 1579920.1