IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM SPECTOR, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:03CV00253 (JBA) |
| | ) | |
| v. | ) | |
| | ) | |
| EQUIFAX INFORMATION SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | MARCH 29, 2004 |

**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S NOTICE OF
SUPPLEMENTAL AUTHORITY
<u>IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

Defendant Equifax Information Services LLC files its notice of Supplemental Authority in support of its Motion for Summary Judgment as follows:

1.  On March 22, 2004, the United States District Court for the Northern District of Illinois issued its Memorandum, Opinion and Order (hereinafter "Memorandum") in the case of <u>Nicholas Quinn v. Equifax Information Services LLC, et al.</u>  A copy of the Memorandum is attached hereto as Exhibit "A".

2.  The <u>Quinn</u> case involved a claim under the Fair Credit Reporting Act, as does the present case.  In its Order, the Court noted that Quinn's only out of pocket loss was higher interest that he paid on a credit card for a few months.  <u>Memorandum,</u> at p. 8.  Quinn also alleged emotional distress and mental anguish <u>Id</u>.  The Court held that "when an injured party provides the only evidence of any emotional distress or mental anguish, he must

reasonably and sufficiently explain the circumstances of the injury and not rely on mere conclusory statements." Id. at p. 9 (citing Ruffin-Thompkins, 2003 U.S. Dist. LEXIS 23647 (N.D. Ill Mar. 21, 2003).

    3.    Equifax submits that Plaintiff in this case has similarly failed to provide sufficient evidence of his emotional damages and that Equifax is entitled to summary judgment as a result.

Respectfully submitted,

EQUIFAX INFORMATION SERVICES, LLC

By_____
Eric D. Daniels (ct 01582)
Jason M. Kuselias (ct 20293)
ROBINSON & COLE LLP
280 Trumbull Street
One Commercial Plaza
Hartford, CT 06103-3697
E-mail: edaniels@rc.com
E-mail: jkuselias@rc.com
Tel. No. (860) 275-8200
Fax No. (860) 275-8299

and, of counsel

J. Anthony Love, Esq.
Georgia Bar No. 459155
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
E-mail: ToLove@kilstock.com
Tel. No. (404) 815-6500

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been sent via first class mail, on the 29th day of March, 2004 to:

        Attorney Joanne S. Faulkner
        123 Avon Street
        New Haven, CT  06511-2422

                                  Eric D. Daniels

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAR 24 2004

| | |
|---|---|
| NICHOLAS QUINN, | ) |
| Plaintiff, | ) |
| v. | ) No. 02 C 5908 |
| EXPERIAN SOLUTIONS, EQUIFAX | ) Wayne R. Andersen |
| INFORMATION SERVICES LLC., GE | ) District Judge |
| CARD SERVICES, SPRING PCS, OSI | ) |
| COLLECTION SERVICES, INC., | ) |
| Defendants. | ) |

### MEMORANDUM, OPINION AND ORDER

Plaintiff, Nicholas Quinn ("Quinn"), brings a three count action against Equifax Information Services LLC ("Equifax"), alleging multiple violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. (2003). Equifax has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Equifax's motion for summary judgment is granted.

### BACKGROUND

This dispute began when an allegedly fraudulent account was opened with Wal-Mart in Quinn's name sometime in April of 2002. On May 15, 2002, Quinn contacted Equifax on an unrelated matter – regarding an OSI collection account he claimed was not his. The OSI collection account was an account that Quinn claimed had been fraudulently opened using his social security number, and Quinn called Equifax to make sure that it was not reporting the OSI collection account in Quinn's credit reports. Equifax researched the issue and on May 23, 2002, informed Quinn that Equifax had never reported an OSI account in his credit report. On June 20, 2002, Quinn contacted Equifax to dispute the Wal-Mart account that was reported in a credit

report prepared by Equifax. On June 20, 2002, when Quinn first informed Equifax of the Wal-Mart dispute, the Wal-Mart account was reported as a current account with a $187.00 balance that was being paid on time.

Equifax reviewed the dispute and prepared a Consumer Dispute Verification form (CDV) that it forwarded to Wal-Mart on June 25, 2002. The CDV apprised Wal-Mart that Quinn was disputing the Wal-Mart account. On June 28, 2002, Wal-Mart advised Equifax that the information regarding the disputed account was accurate as Equifax had reported it. That same day, Equifax informed Quinn of the results of the Wal-Mart reinvestigation and provided him with an updated copy of his credit report.

On July 1, 2002 Quinn contacted Equifax for a second time to dispute the Wal-Mart account. That same day, Equifax reviewed the dispute and prepared a second CDV that it forwarded to Wal-Mart to advise Wal-Mart that Quinn had again disputed the Wal-Mart account opened in his name as a fraudulent account. Wal-Mart did not respond to Equifax, and on July 29, 2002, Equifax deleted the Wal-Mart account in order to comply with the FRCA §1681i thirty day requirement. Under §1681i, once a credit reporting agency is notified of the need to reinvestigate an account, it has thirty days to complete the reinvestigation and fix the inaccuracy. After deleting the Wal-Mart account in accordance with §1681i, Equifax notified Quinn that the Wal-Mart account had been deleted and provided him with another copy of his credit report prepared by Equifax. Quinn filed this action on September 1, 2002.

Quinn's complaint alleges that multiple defendants including, Experian Information Solutions, Equifax Information Services, GE Card Services, Sprint PCS, and, OSI Collection Services, Inc., had been "reporting derogatory and inaccurate statements and information" about

Quinn and his credit history and that the inaccurate information had been reported to third parties. Quinn alleges that the defendants were in violation of multiple provisions of the Fair Credit Reporting Act. Quinn claims damages from loss of credit opportunities, mental anguish, financial and dignitary harm, statutory damages, punitive damages, and attorney's fees. Equifax has moved for summary judgment on all counts. For the following reasons, Equifax's motion for summary judgment is granted.

## DISCUSSION

### A. Summary Judgment

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. CIV. P. 56 (c). A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). Initially, the moving party bears the burden of showing that the record contains no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The governing substantive law establishes which facts are material. *Anderson*, 477 U.S. at 248.

The non-moving party must present more than a "metaphysical doubt as to the material facts" to survive summary judgment. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596 (1986). Additionally, "mere conclusory" allegations are not enough. *Nowak v. St. Rita High School*, 142 F.3d 999, 1002 (7th Cir. 1998).

3

B. <u>Claims under the Act</u>

1. <u>FCRA §1681e (b) Claims</u>

FCRA § 1681e (b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. §1681e (b). In order to recover under this Section, a plaintiff must provide that: (1) there was inaccurate information contained in the consumer report; (2) the inaccuracy was due to the credit reporting company's failure to follow reasonable procedures to ensure maximum accuracy; (3) he suffered actual damages; and (4) those damages were caused by the inaccuracy. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3rd Cir. 1996).

Quinn has alleged that the entire Wal-Mart account was inaccurate as to him and that it was fraudulently opened using his social security number and a different name. Viewing the facts in Quinn's favor, it is reasonable to infer that the Wal-Mart account was erroneously contained in his credit report. However, § 1681e (b) does not establish strict liability, nor does it require Equifax to conduct independent "background research." *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994).

a. <u>Reasonable Standards</u>

Once the plaintiff sufficiently alleges "that a credit reporting agency prepared a report containing inaccurate information," *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991), the question turns on whether Equifax maintained "reasonable standards for assuring maximum accuracy." *Henson*, 29 F.3d at 289. Reasonable procedures are "those that a reasonably prudent person would undertake under the circumstances." *Lee v. Experian*

4

*Information Solutions, LLC,* 2002 WL 22287351, at *3 (N.D. Ill. Oct. 2, 2003). In the vast majority of cases, reasonable procedures should be determined by a jury. *Crabill v. Trans Union, L.L.C.,* 259 F.3d. 662, 664 (7th Cir. 2001). However, there are instances in which reasonable procedures are reasonable as a matter of law. *Crabill v. Trans Union, L.L.C.,* 259 F.3d. 662, 664; *Lee,* 2002 WL 22287351, at *4.

Quinn suggests that he can overcome summary judgment based solely on a showing of inaccuracy in his credit report. Quinn relies heavily on *Parker v. Parker,* claiming "that inaccurate reports by themselves can fairly be read as evidencing unreasonable procedures." 124 F.Supp. 2d 1216, (M.D. Ala. 2000). However, recent decisions have questioned the *Parker* Court's reasoning that inaccurate information equals unreasonable procedures. See *Lee v. Experian Information Solutions* 2002 WL 22287351 (N.D. Ill, Oct. 2, 2003); *Ruffin-Thompkins v. Experian Information Services, LLC,* 2003 U.S. Dist. LEXIS 23647 (N.D. Ill, Dec. 31, 2003). *Parker* is not binding on this Court and thus we choose not to follow its reasoning. Instead, we will follow the binding precedent found in *Crabill,* that allows the "reasonableness of an agency's procedure" to be determined on summary judgment. As this court has recently held, "thus while the determination of whether a procedure is reasonable is a question for a jury in most cases, if the reasonableness of the procedure is beyond question, summary judgment is appropriate." *Ruffin-Thompkins,* 2003 U.S. Dist. LEXIS 23647, at *9, quoting *Crabill,* 259 F.3d at 664.

To determine whether Equifax's procedure was reasonable in this case, we must weigh the "potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." *Philbin,* 101 F.3d at 965. The Seventh Circuit in *Henson* ruled that credit agencies are allowed to

5

rely on information from the furnisher, absent prior information from the consumer that the information might be inaccurate. *Henson*, 29 F.3d at 284. Quinn argues that the *Henson* holding should be read narrowly and that specifically the holding limits "reliable sources" that a credit agency can initially rely on to "court judgment dockets." Although the *Henson* court ruled that "court judgment documents" were presumptively reliable sources, the case should not be read to specifically limit reliable documents to "court judgment documents." *Id.* at 286. To limit the case in this manner would require every credit agency to independently verify each credit line reported to it. The costs associated with that type of investigation would be astronomical.

Courts have found that the *Henson* reasoning excuses credit agencies from independently verifying information provided by credit grantors unless the credit agency knew or had reason to know that the credit grantor was unreliable or reporting inaccurate information. *Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 23647, at *11-12 quoting *Zahran v. Trans Union Corp.*, 2003 U.S. Dist. LEXIS 5089, No. 01 C 1700, at *3 (N.D. Ill. Mar. 21, 2003) and *Field v. Trans Union L.L.C*, 2002 WL 849589, at *4 (N.D. Ill. May 3, 2002).

Quinn has not presented evidence that Wal-Mart is an unreliable source of information. Prior to June 20, 2002, Equifax was not aware, nor should it have reasonably been aware, that there was an error regarding the Wal-Mart account contained in Quinn's credit report. Thus, as a matter of law, any § 1681e (b) claim cannot be sustained before this date. Furthermore, Equifax's post-June 20, 2002, procedures were also reasonable as a matter of law to ensure maximum possible accuracy. Additionally, although this will be discussed more fully in the § 1681i (a) reinvestigation analysis, it is clear that Equifax's reinvestigation was reasonable as a matter of law. Therefore, because Equifax satisfied its reinvestigation obligation under § 1681i (a), its

6

procedures were reasonable to assure maximum possible accuracy under § 1681e (b). *Lee,* 2002 WL 22287351 at * 3.

After receiving a complaint from Quinn, Equifax reviewed the materials sent by Quinn and sent a CDV to Wal-Mart that described the dispute as "customer states not mine." On June 28, 2002, Wal-Mart returned the CDV to Equifax and communicated that the information reported by Equifax was correct. There is no evidence that Equifax knew that Wal-Mart was an unreliable source nor is there any reason for Equifax to doubt that Wal-Mart performed a full and complete reinvestigation regarding Quinn's account. That same day, Equifax informed Quinn of the results of the reinvestigation and provided him with a current copy of his credit report. Additionally, Equifax placed a fraud alert in Quinn's file as Quinn requested. Given the terse dispute Quinn sent to Equifax, the procedure Equifax employed to assure the maximum possible accuracy was reasonable as a matter of law.

### b. Damages

Even if Equifax's procedures were unreasonable, Quinn's claim would still fail as a matter of law because he has not shown that there is a genuine issue of material fact as to whether he suffered any actual damages. In his complaint, Quinn claims that he: (1) was denied credit by various entities; (2) suffered excessive or elevated interest rates and finance charges on his credit card; (3) incurred out of pocket expenses; (4) financial and dignitary harm; and (5) suffered mental anguish and emotional distress. However, between June 20, 2002, the date Equifax was notified of the dispute and July 29, 2002, when the Wal-Mart account was deleted from Quinn's credit report, Equifax did not publish or disseminate a single credit report in Quinn's name. Thus, it is difficult to discern how Quinn was damaged.

7

Quinn stated in a deposition that the only out of pocket loss he suffered as a result of Equifax's alleged inaccurate reporting was the higher interest that he paid on a credit card for "a few months." Fleet Credit Card Service raised the interest Quinn paid on his Fleet Credit card from 10.99% to 21.22% for purchases and balance transfers, and from 19.80% to 23.22% for cash advances. However, Fleet Card Services raised Quinn's interest rates before the Wal-Mart account had even been opened.

Quinn has alleged that Equifax also reported a fraudulent OSI collection account and that he informed Equifax of this account on May 15, 2002. However, Quinn cannot recall ever seeing the OSI collection account in an Equifax credit report and all of the evidence indicates that Equifax never reported the OSI collection account. The only evidence Quinn has offered to support his claim that Equifax reported an OSI collection account in his credit file, is a letter from OSI Collection Services, Inc. that claims that it reported the OSI collection account to all of three of the major credit reporting agencies. The letter is irrelevant because it neither proves nor disproves that Equifax actually reported the OSI collection account. The letter merely suggests that Equifax may have received information about an OSI collection account. Therefore, even if the court considers May 15, 2002, as the date Equifax first learned of the dispute, Quinn's damages claim would still fail because there is no evidence that Equifax ever reported an OSI collection account. Moreover, Quinn has not provided a single shred of evidence to support the claim that he was denied credit as a result of Equifax's alleged inaccurate credit file.

Likewise, Quinn has not provided any evidence to support his claim of emotional distress and mental anguish. "When an injured party provides the only evidence of any emotional distress or mental anguish, he must reasonably and sufficiently explain the circumstances of the

8

injury, and not rely on mere conclusory statements." *Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 23647, at *16 quoting *Field*, 2002 WL 849589, at *6. Quinn has not sufficiently explained the circumstances of his emotional distress, mental anguish, financial and dignitary harm and thus he can not meet the burden required for this element of the claim.

### c. Causation

Because Quinn has failed to support any of his allegations of damages, he cannot show the causal link between the alleged inaccuracy in his report and the alleged damages. To prove causation, Quinn must show that the reporting of inaccurate information in his credit report was a substantial factor that brought about damages. *Philbin*, 101 F.3d at 968. Quinn has not produced evidence that the inaccurate information contained in his credit report was a significant factor in his alleged damages. Even if damages are shown, the claimant must still raise a genuine issue of material fact as to the causation element. *Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 23647, at *16. Specifically, Quinn has not raised a material fact as to the causation element and thus his claim fails as a matter of law regardless of whether damages had been shown, which in this case they had not.

In sum, Quinn has failed to raise a genuine issue as to three of the four tests required to survive summary judgment under a § 1681e (b) claim. Therefore, we grant summary judgment in favor of Equifax on the §1681e(b) claim.

### 2. FCRA 1681i (a) Claims

Quinn next claims that Equifax is liable under § 1681i (a) for failing to conduct a reasonable reinvestigation. § 1681i (a) states:

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

Liability under 1681i (a) does not arise until Equifax received notification from Quinn about the alleged continued reporting of the inaccurate information. *Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 23647, at *18. Although not fully clear, Equifax's duty to reinvestigate might conceivably have arisen at two different points: On June 20, 2002, when Equifax learned of the potential inaccuracy in Quinn's credit report, and on July 1, 2002, when Equifax received a second dispute from Quinn. Equifax is not liable for a failure to reinvestigate until this time. Furthermore, Equifax's reinvestigation procedures after both dates were reasonable as a matter of law.

§1681i (a) (1) (A) imposes a duty to reinvestigate any potential inaccuracy in a consumer's report when the credit agency learns of the potential error. 15 U.S.C. § 1681i (a) (1) (A). In some circumstances, that duty may include a duty to go beyond the original source of information and conduct an independent investigation. *Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 23647, at *18 quoting *Henson*, 29 F.3d at 287. The Court must look to two factors to determine whether Equifax had a duty to take additional steps in its reinvestigation: (1) "Whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source may be unreliable", and (2) "the cost of verifying the accuracy of the source versus the possible harm inaccurately reported

10

information may cause the consumer." *Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 23647, at *18, quoting *Henson*, 29 F.3d at 287.

As discussed above, when Equifax first learned of the dispute, Equifax reviewed the materials Quinn sent and compiled a CDV that it forwarded to Wal-Mart. Equifax did not make any changes to Quinn's credit report because Wal-Mart informed Equifax that the account was accurate as Equifax was reporting it. Equifax informed Quinn of the results of the reinvestigation and provided him with a current copy of his credit report that same day. Equifax admits that its reinvestigation stopped there. Equifax did not contact Quinn to request documents nor did it communicate with Wal-Mart directly. However, Equifax was not required do either at this point and its standard reinvestigation procedure was statutorily sufficient because "the CDV procedure alone is accepted by courts as an adequate method both for assuring accuracy and for reinvestigation." *Lee*, 2003 WL 22287351, at *6 quoting *Dickens v. Trans Union Corp.*, No. 00-5605, 2001 WL 1006259, at *4 (6th Cir. Aug. 23, 2001).

Equifax was not obligated under the *Henson* factors to conduct further investigation. Quinn did not alert Equifax to the possibility that Wal-Mart was an unreliable source of information, and there is no evidence that Equifax knew or should have known that Wal-Mart was an unreliable source of information. There was no suggestion from Wal-Mart's original response that it had not conducted a thorough investigation of the Quinn account. The evidence suggests that Wal-Mart reviewed the account, verified that the information was correct and reported as much to Equifax. Equifax placed a fraud alert in Quinn's credit file, and Equifax took immediate action to inform Quinn of the results of the reinvestigation.

11

On July 1, 2002, Quinn sent a second dispute to Equifax and requested another reinvestigation of the Wal-Mart account. That same day, Equifax generated a CDV that it forwarded to Wal-Mart to advise it that Quinn was disputing the Wal-Mart account as a fraudulent account. Wal-Mart did not get back to Equifax, and Equifax deleted the Wal-Mart account to comply with the 30 day requirement in § 1681i (a). Equifax immediately notified Quinn that the Wal-Mart account had been deleted from his credit file and provided him with an updated copy of his credit report.

Quinn has argued that Equifax had a duty to take additional steps in the reinvestigation of the Wal-Mart account, but this claim is not supported by the record. Both the original reinvestigation and the second reinvestigation were completed and the account was deleted expeditiously. Additionally, Equifax placed a fraud alert in Quinn's file and provided him with multiple copies of his credit report during the reinvestigations. This was not a process that dragged on for months, but instead was promptly reinvestigated and the account deleted within the mandatory time required by the statute. Therefore, Equifax's actions were reasonable as a matter of law. *Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 23647, at *18, quoting *Lee*, 2003 WL 22287351, at *7 n.11.

Assuming arguendo that Equifax had an obligation to go beyond the original source of the information after Quinn disputed the Wal-Mart account for a second time on July 1, 2002, Quinn's claim is still defeated because he has not suffered damages. From June 20, 2002 to July 29, 2002, no credit reports were released to any other person or entity besides Quinn. Therefore, even if Equifax was required to go beyond its initial source in its second reinvestigation, that requirement would not have changed the outcome in this case because Quinn's claim fails as a

12

matter of law as he suffered no damages that were proximately caused by Equifax. Therefore, Equifax's motion for summary judgment on the §1681i(a) claim is granted.

### 3. FCRA 1681i(c) Claims

Quinn claims that Equifax is liable under §1681i(c) for failing to note his dispute. §1681i(c) states:

> Whenever a statement of a dispute is filed ...the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof.

To succeed on this point, Quinn must show that: (1) he disputed inaccurate information contained in his credit file; (2) Equifax's reinvestigation did not resolve his dispute; (3) he filed a statement of dispute with Equifax upon completion of the reinvestigation; and (4) the statement he filed was not included in subsequent credit reports released by Equifax. See *Guimond v. Trans Union Corp.* 45 F.3d 1329, 1334-35 (9th Cir. 1995).

Quinn disputed the inaccurate Wal-Mart account contained in his credit report. The reinvestigation resolved the dispute. Quinn demanded that the Wal-Mart account be deleted from his credit file and the account was deleted within the statutorily imposed time period. As of June 28, 2002, Quinn's credit file contained a fraud alert. Finally, there is no evidence to suggest that Equifax released Quinn's credit report during the period of this dispute. All of the evidence suggests that no one besides Quinn received a copy of his credit file during the dispute. Thus, Quinn's claim fails as a matter of law, and summary judgment must be granted in favor of Equifax.

03/26/04  FRI 17:04  [TX/RX NO 8915]

### 4. Punitive Damages

Quinn's claims under the FRCA have failed and since Quinn's claims cannot survive summary judgment, we must deny his claim for both statutory and punitive damages. Section 1681n (a) states that "[a]ny person who willfully fails to comply with any requirement imposed under [the Act] with respect to any consumer is liable to that consumer" for actual or punitive damages. Willful noncompliance can be shown if Quinn proved that Equifax "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 23647, at *22-23, quoting, *Philbin*, 101 F.3d at 970. "Willful concealment, misrepresentations, or systematic deprivation of consumers' rights could justify an award of statutory, or perhaps punitive damages." *Lee*, 2003 WL 22287351, at *7. The undisputed facts do not suggest that Equifax willfully concealed, misrepresented or systematically deprived Quinn of his rights as consumer. To the contrary, Equifax reinvestigated both of Quinn's disputes and promptly released the findings to Quinn. Quinn has not alleged any facts that rise to the level required for statutory and punitive damages. Hence, Quinn's claims for statutory and punitive damages must fail.

### CONCLUSION

For the foregoing reasons, Equifax's motion for summary judgment (#51-1) is GRANTED.

It is so ordered.

Dated: March 22, 2004

Wayne R. Andersen
United States District Judge

14

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 2 C 5908 | DATE | 3/22/2004 |
| CASE TITLE | Nicholas Quinn vs. Experian Solutions et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Equifax's motion for summary judgment [51-1] is granted.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| ☐ No notices required, advised in open court. | | Document Number |
| ☐ No notices required. | number of notices | |
| ☐ Notices mailed by judge's staff. | 3/24/04 | |
| ☐ Notified counsel by telephone. | date docketed | 64 |
| ✓ Docketing to mail notices. | 6 | |
| ☐ Mail AO 450 form. | docketing deputy initials | |
| ☐ Copy to judge/magistrate judge. | | |
| courtroom deputy's initials TSA | Date/time received in central Clerk's Office | mailing deputy initials |