IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------------x
                                 :

WILLIAM SPECTOR                  :      3:03 CV 253 (JBA)
                                   :

v.                                   :

EQUIFAX INFORMATION SERVICES, LLC  :     DATE: JUNE 7, 2004
                                   :
------------------------------------------------------------x

RECOMMENDED RULING ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
RULING ON PLAINTIFF'S MOTION TO STRIKE AFFIDAVITS AND ON PLAINTIFF'S
MOTION FOR PERMISSION TO SUPPLEMENT HIS REPLY IN SUPPORT OF
SUMMARY JUDGMENT

      Although the factual and procedural history of this lawsuit is presumed, a brief

recitation of the relevant history follows.   Plaintiff William Spector commenced this lawsuit

on February 10, 2003 against defendant Equifax Information Services, LLC ["Equifax"] and

on August 25, 2003, plaintiff filed his First Amended Complaint alleging violations of the Fair

Credit Reporting Act, 15 U.S.C. § 1681 et seq. [ or "FCRA"], the Connecticut Unfair Trade

Practices Act, CONN. GEN. STAT. § 42-110a et seq. ["CUTPA"], the Consumer Credit Reports

Act, CONN. GEN. STAT. § 36A-695, and common law.  (Dkt. #23).

      On October 22, 2003, United States District Judge Janet Bond Arterton referred this

lawsuit to this United States Magistrate Judge for purposes of settlement, and such

conference was held on December 10, 2003 during which the parties discussed outstanding

discovery disputes.  (Dkts. ##38, 47-48, 51 & 56). On December 31, 2003, discovery closed

in this case.  (See Dkt. #54).

      On January 15, 2004, plaintiff filed his Motion for Partial Summary Judgment as to

liability on the basis of defendant's violation of FCRA, brief and affidavits in support, and

Local Rule 56(a)1 Statement. (Dkts. ##58-61).[1]  That same day, defendant filed its Motion

for Summary Judgment, brief in support and Local Rule 56(a)1 Statement. (Dkts. ##65-67).[2]

The parties concurrently filed a Joint Stipulation of Facts ["Joint Stip."]. (Dkt. #68).[3]

On February 2, 2004, defendant filed an Amended and Supplemental Motion for

Summary Judgment and affidavit in support. (Dkts. ##72-73).[4]  On February 17, 2004,

plaintiff filed his Motion to Strike Love Affidavits (referring to affidavits of defense counsel,

─────────────────────

[1]Attached to Plaintiff's Local Rule 56(a)1 Statement (Dkt. #60) is a copy of
"Redirect Batch Header," dated December 2002.

Attached to Plaintiff's Affidavit (Dkt. #61) are the following unnumbered exhibits:
copy of letter from plaintiff to defendant, dated December 12, 2002 ["December 12, 2002
Letter"]; copy of letter from Rachel Spector to defendant, also dated December 12, 2002;
copy of letter to plaintiff from Gulf Customer Service Department, dated April 8, 2003;
copy of letter from plaintiff to defendant, dated May 7, 2003; and copy of certified return
receipt, dated May 7 & 10, 2003 and received May 15, 2003 ["May 7, 2003 Letter"].

[2]Attached to defendant's brief in support (Dkt. #66) are the following seven
exhibits: affidavit of Alicia Fluellen, dated January 15, 2004 ["Fluellen Affidavit"](Exh. A);
copy of plaintiff's deposition transcript, taken on August 21, 2003 ["Plaintiff's
Depo."](Exh. B); copy of correspondence, dated November 5, 2003 ["Citizens'
Documents"], copy of e-mail correspondence, dated January  9 & 13 and March 10 & 17,
2003(Exh. C); affidavit of J. Anthony Love, sworn to January 15, 2004 ["Love Affidavit"]
(Exh. D); another copy of letter to plaintiff from Gulf Customer Service Department, dated
April 8, 2003 ["April 8, 2003 Letter"](Exh. E); copy of correspondence from plaintiff to
Gulf Oil, dated April 10, 2003 ["Gulf Letter"](Exh. F); and copy of Plaintiff's Response to
Equifax Discovery, dated June 19, 2003 (Exh. G).

[3]See n. 10 infra.

[4]Attached to defense counsel's affidavit ["Supplemental Love Affidavit"](Dkt. #73)
are the following exhibits: duplicate copies of e-mail correspondence between counsel,
dated January 9 & 13, 2003 and February 3 & 13, 2003 (Exhs. A-E); and duplicate
copies of correspondence between counsel, dated March 10 & 17, 2003 (Exhs. F-G).

Although the Supplemental Love Affidavit is not signed by a notary public, it has
been signed by Attorney Love, and because the affiant is an officer of the court, the
Magistrate Judge will assume the veracity of its contents.

see Dkt. #66, Exh. D & Dkt. #73).  (Dkts. ##76-77).[5]

That same day, defendant filed its brief in opposition to plaintiff's Motion for Partial Summary Judgment and Local Rule 56(a)2 Statement (Dkts. ##80-81) and plaintiff filed his brief in opposition to defendant's Motion for Summary Judgment and Local Rule 56(a)2 Statement.  (Dkts. ##78-79).[6]  Eight days later, plaintiff filed his reply brief to his Motion for Partial Summary Judgment (Dkt. #82) and defendant filed its reply brief to its Motion for Summary Judgment on March 2, 2004.  (Dkt. #83).

On March 9, 2004, defendant filed its brief in opposition to plaintiff's Motion to Strike Love Affidavits and affidavit in support.  (Dkts. ##84-85).[7]  Twenty days later, defendant filed its Notice of Supplemental Authority in Support of Motion for Summary Judgment.  (Dkt. #86).[8]  On April 5, 2004, Judge Janet Bond Arterton referred the pending motions to this Magistrate Judge.  (Dkt. #87).  On April 7, 2004, plaintiff filed his Response to Defendant's Supplemental Authority.  (Dkt. #88).[9]  One month later, on May 7, 2004, plaintiff filed his Motion for Permission to Supplement His Reply in Support of Summary Judgment (Dkt. #89).  Twelve days later, defendant filed its brief in opposition to this motion.  (Dkt. #90).

---------------------------------

[5]Attached to plaintiff's brief (Dkt. #77) is a copy of defendant's response to Interrogatories, dated October 1, 2003.

[6]Attached to plaintiff's Local Rule 56(a)2 Statement (Dkt. #78) was another copy of defendant's responses to plaintiff's Interrogatories, dated October 1, 2003 and plaintiff's supplemental affidavit, sworn to on February 13, 2004.

Attached to plaintiff's brief (Dkt. #79) was yet another copy of defendant's responses to plaintiff's Interrogatories, dated October 1, 2003.

[7]Attached to defense counsel's affidavit (Dkt. #85) is a copy of defendant's second supplemental responses to plaintiff's Interrogatories, dated December 31, 2003.

[8]Attached as Exh. A was a copy of a recent decision from the Northern District of Illinois.

[9]Attached was the transcript of an oral ruling from the Middle District of Alabama.

3

For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment (Dkt. #58) is <u>denied</u>; Defendant's Motion for Summary Judgment (Dkt. #65) is <u>denied without prejudice as moot</u>; Defendant's Amended and Supplemental Motion for Summary Judgment (Dkt. #72) is <u>granted</u>; Plaintiff's Motion to Strike (Dkt. #76) is <u>denied</u>; and Plaintiff's Motion for Permission to Supplement His Reply in Support of Summary Judgment (Dkt. #89) is <u>denied</u>.

## I. FACTUAL SUMMARY

The factual summary is based on plaintiff's Local Rule 56(a)1 Statement of Facts (Dkt. #60), defendant's Local Rule 56(a)2 Statement of Facts (Dkt. #80), defendant's Local Rule 56(a)1 Statement of Facts (Dkt. #67), plaintiff's Local Rule 56(a)2 Statement of Facts (Dkt. #78) and documents cited therein[10] and consequently does not represent factual

---

[10]In addition to filing their Statement of Facts in accordance with Local Rule 56, the parties filed a Joint Stipulation of Facts on January 15, 2004 ["Joint Stip."].  (Dkt. #68).   The Joint Stip. was not signed by plaintiff's counsel, although she refers to it in plaintiff's Local Rule 56(a)1 Statements of Fact. The Joint Stipulation of Facts is only referred to by the parties in Plaintiff's Motion for Partial Summary Judgment, and the parties' Statements of Facts submitted with this motion do not comply with the Local Rules:

> Each statement of material fact by a movant in a Local Rule 56(a)1 Statement or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial.  The affidavits, deposition testimony, responses to discovery requests, or other documents containing such evidence shall be filed and served with the Local Rule 56(a)1 and 2 Statements in conformity with Fed. R. Civ. P. 56(e).

LOCAL R. CIV. P. 56(a)3. However, because the compliant Statements of Facts submitted with Defendant's Motion for Summary Judgment refer to additional facts beyond those addressed in the other Statements of Facts and Joint Stipulation, this Court refers to all documents, including those without supporting citations.

Moreover, in light of the two pending motions and the four Statements of Facts, for ease of reference, the Court refers to the Statements by docket number.

findings of the Court.

_____On May 20, 2002, plaintiff sued defendant alleging that defendant had allowed users to access his credit file impermissibly for account reviews even though plaintiff had no account with the users.  (Spector v. Equifax, 3:02 CV 870 (GLG) ["Spector I"]).  Plaintiff and defendant were represented by their current counsel and the case ultimately settled.  (Joint Stip., ¶ 17; Dkt. #60, ¶ 29; Dkt. #80, ¶ 29; see Dkt. #67, ¶ 9; Dkt. #78, ¶ 9).

_____In November 2002, plaintiff and his wife sought to purchase a car from Ty Subaru with financing through Citizens Bank.  (Joint Stip., ¶ 4; Dkt. #60, ¶  4; Dkt. #80, ¶  4; Dkt. #67, ¶ 9; Dkt. #78, ¶ 9; Dkt. #66, Plaintiff's Depo. at 13-14).  Citizens Bank made an on-line request to defendant Equifax for a copy of plaintiff's credit report.  (Joint Stip., ¶ 5; Dkt. #60, ¶ 5; Dkt. #80, ¶ 5).

Defendant is a consumer reporting agency that compiles information into consumer reports that can be distributed to users of information who have contracted with defendant.  (Dkt. #67, ¶ 2; Dkt. #66, Fluellen Affidavit, ¶ 2; Dkt. #78, ¶ 2).  Defendant maintains more than 250 million files in a database that is ordinarily available online and the files contain information related to the creditworthiness of consumers.  (Dkt. #67, ¶¶ 3-4; Dkt. #66, Fluellen Affidavit, ¶ 2; Dkt. #78, ¶¶ 3-4).  Generally, in the ordinary course of business, defendant releases a particular consumer's file in two circumstances: (1) to an existing or potential creditor of the consumer (called a "credit report" or a "consumer report") and (2) to the consumer himself pursuant to FCRA (called a "consumer disclosure").  (Dkt. #67, ¶ 5; Dkt. #66, Fluellen Affidavit, ¶  3; Dkt. #78, ¶ 5).  When a consumer files a lawsuit against defendant, defendant initiates certain policies and procedures such as taking the file "offline" so that although the file still exists within defendant's database, it is unavailable electronically to potential creditors and even to defendant's personnel in charge of

responding to routine consumer requests for disclosure. (Dkt. #67, ¶ 6; Dkt. #66, Fluellen Affidavit, ¶¶ 4-5; Dkt. #78, ¶ 6; see Joint Stip., ¶ 19; Dkt. #60, ¶¶ 31 & 33; Dkt. #80, ¶¶ 31 & 33). If a potential creditor requests a file that is offline, it will receive a message stating that the file is unavailable and inviting the credit grantor to contact defendant. (Id.). At that point, the operator is supposed to forward the matter to the Office of Consumer Affairs. (Id.). Defendant does not put a consumer's credit report back on line after it is sued until advised by its outside counsel that the case has been settled and dismissed or that all issues related to the accuracy of the report have been resolved. (Joint Stip., ¶ 20; Dkt. #60, ¶ 34; Dkt. #80, ¶ 34).

On November 27, 2002, defendant responded to Citizens Bank's request for plaintiff's credit file with the following message: "REFERRED FILE–CONTACT CBI CREDIT REPORTING CENTER TO GET THE FILE" and Citizens Bank did not contact defendant Equifax to obtain a copy of the credit file after receiving this message. (Joint Stip., ¶¶ 6-7; Dkt. #60, ¶¶ 6-7; Dkt. #80, ¶¶ 6-7; Plaintiff's Affidavit ¶ 3). Citizens Bank obtained plaintiff's credit report from Experian and denied plaintiff's credit application because the report showed plaintiff's bankruptcy. (Dkt. #67, ¶ 10; Dkt. #78, ¶ 10; Plaintiff's Affidavit ¶ 2; Dkt. #66, Citizens' Documents).

No later than the end of November, three days after Citizens Bank tried to retrieve plaintiff's Equifax credit report, plaintiff obtained financing through another company and bought his car. (Dkt. #67, ¶ 11[1]; Dkt. #78, ¶ 11[1]; Dkt. #66, Plaintiff's Depo. at 17-18).[11]

On December 12, 2002, plaintiff wrote to Equifax for a copy of his credit disclosure. (Joint Stip., ¶ 8; Dkt. #60, ¶ 8; Dkt. #80, ¶ 8; Plaintiff's Affidavit ¶ 5 & December 12, 2002 Letter). Defendant received this December 12th letter; however, plaintiff's file was offline

---

[11]There were two paragraphs 11.

at the time as a result of defendant's policy of taking files offline when the consumer is involved in litigation.  (Joint Stip., ¶ 11; Dkt. #60, ¶ 19; Dkt. #80, ¶ 19).  When defendant receives a request by a consumer for copies of his or her credit file when the consumer is involved in litigation, defendant's policy is that the request be forwarded to its outside counsel to handle.  (Dkt. #67, ¶¶ 7 & 13; Dkt. #66, Fluellen Affidavit, ¶ 6; Dkt. #78, ¶¶ 7 & 13).  Defendant did not provide plaintiff with a copy of his consumer disclosure at any time within six weeks of December 12, 2002.  (Joint Stip., ¶ 9; Dkt. #60, ¶ 17; Dkt. #80, ¶ 17; Plaintiff's Affidavit ¶ 13).  However, typically, the requested disclosure is sent to the consumer on the same day or within a few days of defendant's receipt of the request.  (Joint Stip., ¶ 18; Dkt. #60, ¶ 18; Dkt. #80, ¶ 10).

On January 9, 2003, defense counsel received an e-mail from plaintiff's counsel advising him that she had a  new  claim against defendant because plaintiff had been denied credit based on an Equifax report and because his "request for a copy of his report ha[d] been ignored."  (Dkt. #67, ¶ 14; Dkt. #78, ¶ 14; Supplemental Love Affidavit,  ¶ 3 & Exh. A).  Four days later, defense counsel responded to plaintiff's counsel's e-mail, inquiring when plaintiff had asked for his credit report, reminding plaintiff's counsel that she knows she just has to ask him for a copy, and asking plaintiff's counsel if she wants him to send her a copy.  (Dkt. #67, ¶ 15; Dkt. #78, ¶ 15; Supplemental Love Affidavit ¶ 4 & Exh. B).  Thereafter, defense counsel learned from his client's Office of Consumer Affairs that it had no record of a disclosure request from plaintiff, although counsel subsequently discovered that such request was received by another department on or before December 20, 2002.  (Dkt. #67, ¶ 16; Dkt. #78, ¶ 16; Supplemental Love Affidavit,  ¶ 5).

On February 3, 2003, defense counsel received another e-mail from plaintiff's counsel, inquiring about whether defendant would settle "all [of plaintiff's] outstanding

claims." (Dkt. #67, ¶ 17; Dkt. #78, ¶ 17; Supplemental Love Affidavit,  ¶ 6 & Exh. D).
Plaintiff's counsel informed defense counsel that she would file her suit within a few days,
as to which defense counsel replied that defendant had "no record" of her client's request.
(Id.).

Plaintiff filed the current lawsuit in February 2003.  (Joint Stip., ¶ 18; Dkt. #60, ¶ 32;
Dkt. #80, ¶ 32; Supplemental Love Affidavit, ¶ 7).  Spector I was settled on March 4, 2003
and the case was dismissed on March 26, 2003; thus, plaintiff's file was still offline when he
filed the current lawsuit. (Joint Stip., ¶ 18; Dkt. #60, ¶ 32; Dkt. #80, ¶ 32; Dkt. #67, ¶¶ 18-19;
Dkt. #78, ¶¶ 18-19; Supplemental Love Affidavit, ¶ 8).

Sometime in March 2003, after the filing of the current lawsuit, plaintiff went to a Gulf
Oil gas station, attempted to purchase gas using a Gulf Oil card he had for "many years"
(although this was the first time he ever used it), and the card was declined.  (Dkt. #67, ¶ 20;
Dkt. #78, ¶ 20; Dkt. #66, Plaintiff's Depo. at 32-33).  Plaintiff contacted Gulf Oil.  (Dkt. #67,
¶ 21; Dkt. #78, ¶ 21; Dkt. #66, Plaintiff's Depo. at 33).  On April 10, 2003, plaintiff wrote Gulf
and asked that the account be re-opened and that his daughter be added as an authorized
user. (Dkt. #67, ¶ 23; Dkt. #78, ¶ 23; Dkt. #66, Gulf Letter).  Gulf Oil electronically requested
copies of plaintiff's credit file on April 7, 2003.  (Dkt. #67, ¶ 24; Dkt. #78, ¶ 24; Dkt. #66,
Fluellen Affidavit, ¶ 8).  Plaintiff's file was offline at the time of these requests, and Gulf
received a notification similar to the one received by Citizens Bank.  (Joint Stip., ¶ 13; Dkt.
#60, ¶ 23; Dkt. #80, ¶ 23; Dkt. #67, ¶ 25; Dkt. #78, ¶ 25; Dkt. #66, Fluellen Affidavit, ¶ 8).

Thereafter, in April 2003, Gulf Oil sent an adverse action letter regarding plaintiff's
credit card. (Joint Stip., ¶ 12; Dkt. #60, ¶ 22; Dkt. #80, ¶ 22; Plaintiff's Affidavit ¶ 15 & April
8, 2003 Letter).  Plaintiff's Gulf Oil card is now active and plaintiff has used the card since
with no problems.  (Dkt. #67, ¶ 26; Dkt. #78, ¶ 26; Dkt. #66, Plaintiff's Depo. at 35).

On May 7, 2003, plaintiff submitted a request for a copy of his credit file which defendant received three days later; however, the letter did not make its way to defense counsel until some time thereafter. (Joint Stip., ¶¶ 14-15; Dkt. #60, ¶ 24-26; Dkt. #80, ¶¶ 24-26; Dkt. #67, ¶ 27; Dkt. #78, ¶ 27; Plaintiff's Affidavit ¶¶ 16-18 & May 7, 2003 Letter with receipts; Supplemental Love Affidavit ¶ 14). Within eight weeks after May 10, 2003, defendant did not provide plaintiff with a copy of his consumer disclosure. (Joint Stip., ¶ 16; Dkt. #60, ¶ 27; Dkt. #80, ¶ 27). Defense counsel was not aware of plaintiff's second request for a disclosure until he received it from defendant. (Dkt. #67, ¶ 27; Dkt. #78, ¶ 27; Supplemental Love Affidavit, ¶ 14). A copy of plaintiff's credit file was sent to him on July 16, 2003. (Dkt. #67, ¶ 27; Dkt. #78, ¶ 27; Dkt. #66, Fluellen Affidavit, ¶ 10).

Plaintiff's credit file was offline between approximately June 7, 2002 and June 19, 2003. (Joint Stip., ¶ 21; Dkt. #60, ¶ 35; Dkt. #80, ¶ 35). In late August 2003, plaintiff's counsel brought to defense counsel's attention some additional items on his July 16, 2003 report that he claimed were inaccurate and defense counsel forwarded these disputes directly to defendant for handling. (Dkt. #67, ¶ 28; Dkt. #78, ¶ 28; Supplemental Love Affidavit, ¶ 15). After investigating plaintiff's additional disputes, defendant sent him another copy of his report in September 2003. (Dkt. #67, ¶ 28; Dkt. #78, ¶ 28; Supplemental Love Affidavit, ¶ 16).

On December 31, 2003, defendant provided a supplemental discovery disclosure to plaintiff after defendant found plaintiff's letter and envelope of December 12, 2002. (Dkt. #60, ¶ 21; Dkt. #80, ¶ 21). Additionally, on February 6, 2004, defendant filed its Amended Answer, reflecting its knowledge of plaintiff's requests. (Dkt. #75).

## II. DISCUSSION

### A. PLAINTIFF'S MOTION TO STRIKE LOVE AFFIDAVITS

When a party files or a opposes a motion for summary judgment, the party may submit supporting or opposing affidavits that "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e). See FED. R. CIV. P. 56(a)-(b); see Santos v. Murdock, 243 F.3d 681, 684 (2d Cir. 2001)(affidavits must be admissible themselves or must contain evidence that will presented in an admissible form at trial).

Plaintiff seeks to strike defense counsel's affidavits on grounds that "[c]ounsel's affidavit altered his previous factual position" as he denied receiving either the plaintiff's December 2002 or May 2003 request for his consumer disclosure and counsel now avers that he did receive the May request before July 16, 2003.  (Dkt. #77, at 2)(emphasis omitted).[12]

Defendant acknowledges that although there was originally some confusion about the receipt of the letters, defendant did not intentionally deny receipt and defendant amended its Answer and discovery responses to reflect such receipt after it recognized its mistake.  (Dkt. #84, at 1; see id. at 4, n.1).[13]  Specifically, defense counsel represents that he did not recall receiving the May 7, 2003 letter until he reviewed his file the night before the December 10, 2003 settlement conference held before this Magistrate Judge. (Dkt. #84, 2-3; Dkt. #85, ¶ 2).  The next morning, before the settlement conference, defense counsel provided a copy of this letter to plaintiff's counsel; after the settlement conference and in accordance with this Magistrate Judge's Memorandum issued to facilitate a number of

_____

[12]Plaintiff's brief begins with the number 2.  For ease of reference, the Court refers to the numbers as printed on each page of the brief.

[13]Defendant's brief is not numbered.

outstanding discovery requests, defense counsel reviewed a copy of defendant's internal file which included a copy of an e-mail, dated June 15, 2003, and which indicated that defense counsel previously received the May letter and asked defendant to send plaintiff a copy of his report. (Dkt. #84, at 3; Dkt. #85, ¶¶ 2-3).[14]

Plaintiff is correct in observing that defense counsel has averred that he did not recall receiving the May 7, 2003 letter or sending the e-mail reflecting his receipt of the letter and asking defendant to send plaintiff a copy of his report, despite the fact that such letter and e-mail were later located in his file. (See Supplemental Love Affidavit, ¶ 14; Dkt. #85, ¶¶ 2-3). However, after defense counsel learned of the existence of plaintiff's December 12, 2002 letter, plaintiff's May 7, 2003 letter, and a copy of defense counsel's own June 15, 2003 e-mail, defendant amended its Answer on February 6, 2004[15] to reflect such receipt. (Dkt. #75, ¶¶ 8 & 12). Additionally, on December 31, 2003, defendant served a supplemental discovery response to Interrogatories Nos. 19 and 20, which admitted receipt of the May 7, 2003 letter. (Dkt. #84, at 4, n.1).[16]

Plaintiff urges the Court to invoke Rule 56(g), Rule 11(c), or Rule 26(g)(3) and "[a]t the very least," strike the specified portions of the affidavits.[17] (Dkt. #77, at 3). The Court

_____

[14]Dkt. #84 refers to the date as June 15, 2003, whereas Dkt. #85 refers to it as June 3, 2003.

[15]Defendant's Amended Answer references a "[M]ay 27, 2003" letter. (Dkt. #75, ¶ 12)(emphasis added). In light of the record before the Court, the Court presumes defendant is referring to the May 7, 2003 letter.

[16]Although defendant's brief represents that a "copy of this response is attached hereto as Exhibit B," no exhibits are attached to the brief. The December 31, 2003 discovery response is, however, attached to Dkt. #85. See n. 7 supra.

[17]Plaintiff requests that the Court strike paragraphs "3 (in part), 6 (in part), 7 (except for the last sentence, [and] 8-13" from Dkt. #73 and paragraphs "2, 5(in part, [and] 6-12" from Exhibit D of Dkt. #66. (Dkt. #77, at 4).

11

declines to do so. Defense counsel's statement were not offered for an improper purpose or in bad faith (<u>see</u> Fed. R. Civ. P. 11(c) & 56(g)), as defense counsel has repeatedly acknowledged his lapse in memory; however, defense counsel had an obligation to search his file before denying factual contentions so that such denials could be "reasonably based on a lack of information or belief."[18] (<u>See</u> Fed. R. Civ. P. 11(b)). Notwithstanding the somewhat careless approach taken by both counsel in this case,[19] defense counsel has submitted the proper amendments in a timely fashion and his affidavits comply with Fed. R. Civ. P. 56(e) as defense counsel is competent to testify to the matters stated, and his statements are "made on personal knowledge," and "set forth such facts as would be admissible in evidence."

Plaintiff also contends that the first affidavit included extensive discussion of settlement negotiations in <u>Spector I</u>. (Dkt. #77, at 3-4). Defendant responds that the information about the settlement negotiations was provided to show the context, history and nature of the communications between the attorneys in this case and defendant has no objection if the Court disregards such references as they will not affect the outcome on liability. (Dkt. #84, at 4). The information offered by defendant does not violate Federal Rule of Evidence[20] 408 which prohibits the admission of statements "to prove liability for or invalidity of the claim or its amount," and to the extent Love's original affidavit (Dkt. #66, Love Affidavit) "[e]vidence[s] . . . conduct or statements made in compromise negotiations," such discussion appropriately has been eliminated by the Supplemental Love Affidavit.

---

[18]Plaintiff, however, may seek reimbursement for the costs incurred in the initial fruitless discovery requests.

[19]<u>See</u> nn. 4, 10-16 <u>supra</u> & n.20 <u>infra</u>.

[20]Defendant erroneously refers to this as Federal Rule of Civil Procedure 408. (Dkt. #84, at 4).

Moreover, the Court will "disregard" the extensive "banter" between counsel because, as defense counsel points out, it will not affect the outcome on liability.  (Dkt. #84, at 4).

B. CROSS-MOTIONS FOR SUMMARY JUDGMENT

The standard for summary judgment is well-established.  The moving party is entitled to summary judgment if it demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The standard for granting summary judgment "mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)(citation omitted).  Upon motion, after adequate time for discovery, Rule 56(c) mandates the entry of summary judgment against a party

> who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

This showing may be made by "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any."  FED. R. CIV. P. 56(c).  However, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is

ruling on a motion for summary judgment or for a directed verdict.  The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (citation omitted).  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson, 477 U.S. at 248 (citation omitted).  A "material fact" is a disputed fact the resolution of which will affect the "outcome of the suit under the governing law."  Id.  A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The party moving for summary judgment must "carry its burden of showing the absence of any genuine issue of fact."  Adickes v. S.H. Kress & Co., 398 U.S. 144, 153 (1970).  "On summary judgment the inferences to be drawn from the underlying facts contained in the [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion.'"  Adickes, 398 U.S. at 158-59, quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Both parties' motions for summary judgment focus on two important issues: defendant's alleged violation of FCRA through its adoption and use of its "offline" policy, and the recovery of damages under FCRA and CUTPA.[21]

<u>1. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

---

[21]Defendant comments that "[p]laintiff has apparently abandoned his claims that [defendant] violated the Fair Credit Reporting Act by not providing creditors with a copy of his credit report during the time that it was [offline] and by providing its attorneys with his credit file for their use in defending this lawsuit.  Therefore, [defendant] addresses . . . only [plaintiff's] claim that [defendant] is liable for its alleged failure to provide plaintiff with copies of his consumer disclosure upon request." (Dkt. #81, at 1).

_____"FCRA creates a private right of action against credit reporting agencies for the negligent . . ., or willful, . . . violation of any duty imposed under the statute." Casella v. Equifax Credit Info. Serv., 56 F.3d 469, 473 (2d Cir. 1995), cert. denied, 517 U.S. 1150 (1996).    Section 1681g of FCRA provides, inter alia, that "[e]very consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer: . . . [a]ll information in the consumer's file at the time of the request. . . ."    Section 1681j(b) requires a consumer reporting agency to furnish a consumer with a copy of his credit report, without charge, if a consumer makes a request not later than sixty days after an adverse action notice is received by the consumer or a debt collection agency.    Moreover, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."    15 U.S.C. § 1681e(b).

Plaintiff is seeking partial summary judgment "as to liability alone on the basis of defendant's violation" of FCRA.   (Dkt. #58).   Plaintiff contends that defendant has "violated the plain language of . . . FCRA, as well as its important public purposes" by failing to provide plaintiff with a copy of his credit file after plaintiff submitted his request because his file had been taken offline after plaintiff sued defendant on or about June 7, 2002.   (Dkt. #59, at 1-2).

_____ a. LIABILITY

According to defendant, its offline policy is supposed to operate as follows: when a consumer files a lawsuit against defendant, defendant initiates certain policies and procedures such as taking the file "offline" so that although the file still exists within defendant's database, it is unavailable electronically to potential creditors and even to defendant's personnel in charge of responding to routine consumer requests for disclosure.

(Joint Stip., ¶ 19; Dkt. #67, ¶ 6; Dkt. #66, Fluellen Affidavit, ¶¶ 4-5; Dkt. #78, ¶ 6; see Dkt. #60, ¶¶ 31 & 33; Dkt. #80, ¶¶ 31 & 33).  If a potential creditor requests a file that is offline, it will receive a message stating that the file is unavailable and inviting the credit grantor to contact defendant. (Id.).  At that point, the operator is supposed to forward the matter to the Office of Consumer Affairs.  (Id.).  When defendant receives a request by a consumer for copies of his or her credit file when the consumer is involved in litigation, defendant should forward the request to its outside counsel to "handle."  (Dkt. #67, ¶¶ 7 & 13; Dkt. #66, Fluellen Affidavit, ¶¶ 5-6; Dkt. #78, ¶¶ 7 & 13).  Defendant does not put a consumer's credit report back on line after it is sued until advised by its outside counsel that the case has been settled and dismissed or that all issues related to the accuracy of the report have been resolved. (Joint Stip., ¶ 20; Dkt. #60, ¶ 34; Dkt. #80, ¶ 34).

In this case, after Citizens Bank received the following message: "REFERRED FILE-CONTACT CBI CREDIT REPORTING CENTER TO GET THE FILE," Citizens Bank did not contact defendant, but rather, obtained plaintiff's credit report from Experian, another consumer reporting agency.  (Joint Stip., ¶¶ 6-7; Dkt. #60, ¶¶ 6-7; Dkt. #80, ¶¶ 6-7).  Citizens Bank obtained plaintiff's credit report from Experian and, according to defendant, denied plaintiff's credit application because the report showed plaintiff's bankruptcy.  (Dkt. #67, ¶ 10; Dkt. #78, ¶ 10; Dkt. #66, Citizens' Documents).  Moreover, three days later, plaintiff obtained financing through another company.  (Dkt. #67, ¶ 11[1]; Dkt. #78, ¶ 11[1]; Dkt. #66, Plaintiff's Depo. at 17-18).  With respect to this incident, the record does not include evidence that the offline message resulted in harm to plaintiff since the denial of the credit application was based on plaintiff's bankruptcy, not based on the Equifax report, as plaintiff contends.  (Dkt. 67, ¶ 10; Dkt. #78, ¶ 10).

Approximately fifteen days after Citizens Bank received the adverse action notice,

plaintiff wrote defendant for a copy of his credit disclosure. Section 1681j(b) requires a consumer reporting agency to furnish a consumer with a copy of his credit report, without charge, if a consumer makes a request not later than sixty days after an adverse action notice is received by the consumer or a debt collection agency.  At the time defendant received plaintiff's letter of December 12, 2002, plaintiff's file was offline as a result of defendant's policy of taking files offline when the parties are involved in litigation.  (Joint Stip., ¶ 11; Dkt. #60, ¶ 19; Dkt. #80, ¶ 19).   Pursuant to defendant's policy, defendant should have forwarded the request to its outside counsel to handle, but defendant did not act in accordance with this policy and as a result, did not provide plaintiff with a copy of his consumer disclosure at any time within six weeks of December 12, 2002.  (Joint Stip., ¶ 9; Dkt. #60, ¶ 17; Dkt. #80, ¶ 17; Dkt. #67, ¶¶ 7 & 13; Dkt. #66, Fluellen Affidavit, ¶ 6; Dkt. #78, ¶¶ 7 & 13; Plaintiff's Affidavit ¶ 13).   Defendant avers that in the typical situation, the requested disclosure is sent to the consumer on the same day or within a few days of defendant's receipt of the request (Joint Stip., ¶ 10; Dkt. #60, ¶ 18; Dkt. #80, ¶ 18).   However, with respect to consumer's whose files are offline, there is nothing in the record regarding how promptly a consumer's response is processed once the consumer's request is forwarded to defense counsel "for handling," beyond the two incidents addressed in this lawsuit.

In this case, defense counsel learned from the Office of Consumer Affairs that it has no record of a disclosure request from plaintiff; however, counsel subsequently discovered that such request was received by another department on or before December 20, 2002.  (Dkt. #67,  ¶ 16; Dkt. #78, ¶ 16; Supplemental Love Affidavit, ¶ 5).  It is not clear from the record why, in this case, defendant acted in a manner inconsistent with its stated policy, or whether, as mentioned above, defendant's policy ultimately allows for the disclosure of a

17

consumer's report on request as required by FCRA.

Sometime in March 2003, after the filing of the current lawsuit, plaintiff went to a Gulf Oil gas station, attempted to purchase gas using a Gulf Oil card he had for "many years" (although this was the first time he ever used it), and the card was declined. (Dkt. #67, ¶ 20; Dkt. #78, ¶ 20; Dkt. #66, Plaintiff's Depo. at 32-33). On April 10, 2003, plaintiff wrote Gulf and asked that the account be re-opened and that his daughter be added as an authorized user. (Dkt. #67, ¶ 23; Dkt. #78, ¶ 23; Dkt. #66, Gulf Letter). Gulf Oil electronically requested copies of plaintiff's credit file on April 7, 2003. (Dkt. #67, ¶ 24; Dkt. #78, ¶ 24; Dkt. #66, Fluellen Affidavit, ¶ 8). Plaintiff's file was offline at the time of these requests, and Gulf received a notification similar to the one received by Citizens Bank. (Joint Stip., ¶ 13; Dkt. #60, ¶ 23; Dkt. #80, ¶ 23; Dkt. #67, ¶ 25; Dkt. #78, ¶ 25; Dkt. #66, Fluellen Affidavit, ¶ 8).

Although in April 2003, Gulf Oil sent plaintiff an adverse action letter regarding plaintiff's credit card (Joint Stip., ¶ 12; Dkt. #60, ¶ 22; Dkt. #80, ¶ 22; Plaintiff's Affidavit ¶ 15 & April 8, 2003 Letter), plaintiff's Gulf Oil card is now active and plaintiff has used the card since with no problems. (Dkt. #67, ¶ 26; Dkt. #78, ¶ 26; Dkt. #66, Plaintiff's Depo. at 35).

On May 7, 2003, after the adverse action notice was received in response the Gulf Oil card declination, plaintiff submitted a request for a copy of his credit file which defendant received three days later; however, the letter did not make its way to defense counsel until some time thereafter. (Joint Stip., ¶¶ 14-15; Dkt. #60, ¶¶ 24-26; Dkt. #80, ¶¶ 24-26; Dkt. #67, ¶ 27; Dkt. #78, ¶ 27; Plaintiff's Affidavit ¶¶ 16-18 & May 7, 2003 Letter & receipts; Supplemental Love Affidavit ¶ 14). Within eight weeks after May 10, 2003, defendant did not provide plaintiff with a copy of his consumer disclosure. (Joint Stip., ¶ 16; Dkt. #60, ¶ 27; Dkt. #80, ¶ 27). Defense counsel was not aware of plaintiff's second request for a disclosure until he received it from defendant. (Dkt. #67, ¶ 27; Dkt. #78, ¶ 27; Supplemental

Love Affidavit, ¶ 14).  A copy of plaintiff's credit file was sent to him on July 16, 2003 and the parties disagree as to whether this disclosure only occurred as a result of the settlement reached in <u>Spector I</u>. (Dkt. #67, ¶ 27; Dkt. #78, ¶ 27; Dkt. #66, Fluellen Affidavit, ¶ 10; Supplemental Love Affidavit ¶ 14).

In his reply brief, plaintiff contends that defendant's failure to comply with plaintiff's requests was deliberate because "the offline policy that resulted in the repeated violations was adopted intentionally[;] . . . [defendant] was repeatedly put on notice of the disclosure request . . . ," and defendant was "willing to disregard the express limitations of . . . FCRA." (Dkt. #82, at 2).  Willful noncompliance exists when a defendant acted in "'conscious disregard' of the consumer's rights or that the defendant's noncompliance with . . . FCRA was 'deliberate and purposeful.'" <u>Spector v. Trans Union LLC First USA Bank</u>, 301 F. Supp. 2d 231, 237 (D. Conn. 2004)["<u>Spector v. Trans Union</u>"], <u>citing Casella</u>, 56 F.3d at 476 (additional citation omitted).  There is no evidence in the record that defendant acted in a wilful, deliberate, and intentional manner in its failure to provide plaintiff with a copy of his credit report.

Defendant's offline policy, if implemented in the manner in which defendant described, would not violate FCRA, provided counsel acts promptly in processing a consumer's request after such request is forwarded to defense counsel "for handling."  In this case, however, plaintiff's request was twice misdirected – both the December 12, 2002 and the May 7, 2003 letters were either forwarded to the wrong department or misplaced. Under these circumstances, "a permissible inference of negligence may be drawn." <u>Hauser v. Equifax, Inc.</u>, 602 F.2d 811, 817 (8th Cir. 1979)(finding no willful noncompliance where only one of plaintiff's files was disclosed, which were not cross-referenced).  In its brief in opposition, defense counsel concedes that "mistakes" were made in handling plaintiff's

19

requests.  (Dkt. #81, at 2).[22]

### b.  DAMAGES

Under FCRA, "[a]ny person who willfully fails to comply with any requirement imposed under [FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of . . .  any actual damages sustained by the consumer . . . of not less than $100 and not more than $1000; or . . . such amount of punitive damages as the court may allow. . . ."  15 U.S.C. §1681n(a).  Plaintiff may also recover actual damages from defendant if defendant was "negligent in failing to comply with any requirement imposed under [FCRA]." 15 U.S.C. § 1681o(a).  As United States District Judge Janet Bond Arterton held three years ago: "Where a plaintiff claims a negligent violation of . . . FCRA, he must also provide some evidence from which a reasonable factfinder could conclude that he suffered actual damages as a result of defendant's actions in order to survive summary judgment." McMillan v. Experian, Inc., 170 F. Supp. 2d 278, 284 (D. Conn. 2001)(additional citations omitted).

In its brief in opposition, defendant emphasizes that FCRA is not a strict liability statute, that a plaintiff cannot recover "nominal" damages under FCRA, and that under § 1681o(a), plaintiff can only recover actual damages, "which do not exist" in this case. (Dkt. #81, at 2).  Plaintiff testified that he is seeking to recover damages for "postage, emotional

---

[22]In his Motion for Permission to Supplement His Reply in Support of Summary Judgment (Dkt. #89), plaintiff seeks to add the deposition testimony of a "longtime employee and expert witness" for Experian, taken in a lawsuit pending in federal court in Texas, at which the deponent testified that when a consumer's file is taken off-line, "you can pretty much guarantee that [he or she is] going to get turned down for credit when [he or she] appl[ies] for credit."  (At 1-3). Defendant has objected to this motion (Dkt. #90), in that plaintiff's motion essentially turns this deponent into a new witness and expert witness for plaintiff, his testimony has no probative value here, defendant has not been given a complete transcript of the testimony, and defendant has not had an opportunity to cross-examine him.  (At 1).

The testimony would have no bearing on any of the issues addressed here.

20

distress and worry." (Dkt. #66, Plaintiff's Depo. at 44). Plaintiff testified that he spent "under $20" in postage in this case, he has had "[s]ome sleepless nights," "anxiety," and "[m]aybe annoyance." (Id. at 44-45). In Casella, the Second Circuit held that actual damages "may include humiliation and mental distress even in the absence of out-of-pocket expenses." 56 F.3d at 474 (multiple citations omitted). The Second Circuit upheld that district judge's granting of summary judgment for defendant, in that plaintiff had failed to prove that his emotional distress was caused by defendants. Id. at 474-75. In addition, plaintiff had presented no evidence that during the relevant time period, either defendant had provided plaintiff's credit report to any third party, so that "[n]o rational trier of fact could infer from this record that any potential creditor or other person in [plaintiff's] community learned of any harmful information from [defendants]." Id. at 475. Thus, as then Chief Judge Jon O. Newman wrote, plaintiff's "argument boils down to the bare contention that he is entitled to damages for pain and suffering simply because he knew of an inaccurate and potentially damaging item in his credit report. We are unaware of any case extending FCRA damages that far." Id. (multiple citations omitted).

Three years ago, United States District Judge Janet Bond Arterton analyzed the Casella decision as follows:

> Contrary to plaintiff's assertions, Casella does not stand for the proposition that a denial of credit is not necessary to make out a FCRA violation, and contrary to defendant's assertions, Casella does not itself require a denial of credit to make out a FCRA violation. Instead, Casella stands for the proposition that recovery under . . . FCRA for pain and suffering is precluded where the plaintiff cannot show that a creditor was aware of the inaccurate information, because mere knowledge by a plaintiff of potentially damaging credit information is insufficient FCRA damages.

McMillan, 170 F. Supp. 2d at 286 n.10 (emphasis in original). Judge Arterton, acknowledging that McMillan presented "a close case," denied defendant's motion for summary judgment, in light of plaintiff's deposition testimony of his "general . . . distress

21

resulting from his bad credit." Id. at 287.  See also Spector v. Trans Union, 301 F. Supp. 2d at 236-37.

Under Casella and McMillan, plaintiff here cannot recover for any alleged emotional distress.  With respect to the incidents in late 2002, as previously indicated, Citizens Bank did not contact defendant Equifax to obtain a copy of the credit file after receiving the offline message; Citizens Bank instead obtained plaintiff's credit report from Experian and then denied plaintiff's credit application because the report showed plaintiff's bankruptcy; three days after Citizens Bank tried to retrieve plaintiff's Equifax credit report, plaintiff obtained financing through another company and bought his car; and plaintiff has no recoverable emotional distress by virtue of the unresponded to December 12, 2002 request.  With respect to the incidents in spring 2003, Gulf Oil declined plaintiff's use of a Gulf Oil card he had never used before in March 2003; the next month, Gulf on its own initiative electronically requested a copy of plaintiff's credit file and received the offline notice; three  days later plaintiff wrote Gulf and asked that the account be re-opened; plaintiff's Gulf Oil card is now active and plaintiff has used the card since with no problems; and similarly, plaintiff has no recoverable emotional distress by virtue of the unresponded to May 7, 2003 letter.

As a result, the only "actual damages" plaintiff has are his expenses for the certified mail sent in May 2003, for which he spent "under $20."  (Dkt. #66, Plaintiff's Depo. at 44. See also Plaintiff's Affidavit ¶¶ 16-18 & May 7, 2003 Letter with receipts).  However, the actual receipt indicates that the true price was $4.42: $.37 for postage stamp, $2.30 for the certified fee, and $1.75 for the return receipt fee.  (Plaintiff's Affidavit, May 7, 2003 Letter with receipts).  The expense for a single letter, sent by certified mail, for less than $5.00,  in and of itself, with no other damages, is insufficient to constitute "actual damages" giving rise

22

to a FCRA claim.[23]

## 2. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In its brief, defendant contends that: (1) defendant did provide plaintiff with three copies of his credit report between March and July 2003; (2) defendant has no duty to provide his report to potential creditors; (3) plaintiff has no actual damages; and (4) because defendant did not willfully violate any law, plaintiff is precluded from recovering either statutory or punitive damages. (Dkt. #66, at 1, 3-4, 12-26; Dkt. #83). Plaintiff responds that defendant acted intentionally on at least five occasions in its refusal to provide plaintiff with a copy of his disclosure despite notice of his requests; defendant's March 2003 disclosure was part of the settlement negotiations in Spector I; and the July 2003 disclosure occurred

---

[23]This is not to say that postal expenses can never constitute "actual damages"; they simply fail to do so in the context of this case.

In his reply brief, plaintiff argues that his postage also "satisfies . . . the 'ascertainable loss' requirement of CUTPA," without any further explanation. (Dkt. #82, at 3). Under CUTPA, "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by § 42-110b, may bring an action . . . to recover actual damages." CONN. GEN. STAT. § 42-110g(a). Although a party seeking to recover damages under CUTPA must present evidence supporting a reasonable estimate of the damages suffered, "CUTPA is not limited to providing redress only for consumers who can put a precise dollars and cents figure on their loss." Hinchliffe v. American Motors Corp., 184 Conn. 607, 618 (1981). "[T]he inclusion of the word 'ascertainable' to modify the word 'loss' indicates that plaintiffs are not required to prove actual damages of a specific dollar amount. 'Ascertainable' means 'capable of being discovered, observed or established.'" Id. at 613 (citation omitted). Thus, "[t]o equate . . . 'ascertainable loss of money or property' with 'actual damages in a particular amount' would render nugatory a significant portion of CUTPA." Id. at 618-19.  Despite the broad language of CUTPA, especially as interpreted in the Hinchliffe decision, plaintiff's postal expenses for a single certified letter does not satisfy the "ascertainable loss" requirement of CUTPA.

Similarly, in his Motion for Permission to Supplemental His Reply in Support of Summary Judgment (Dkt. #89), plaintiff mentions a recent $50,000 verdict before Chief Judge Robert N. Chatigny in a FCRA case. (At 3).  In its brief in opposition, defendant correctly observes that the "one-sentence reference" to this verdict "hardly begins to explain all of the facts that case or the basis for the jury's verdict. (Dkt. #90, at 2).

after defendant claimed it never received the request.[24]  (Dkt. #79, at 1-4).  Plaintiff again reiterates that he has satisfied the economic damages requirement of FCRA and the "ascertainable loss" requirement of CUTPA (Dkt. #79, at 4-6.  See also Dkt. #88).

Defendant's first, third and fourth arguments already have been addressed in Section II.B.1 supra.  With respect to defendant's second argument, it correctly contends that although FCRA requires a credit reporting agency to provide a consumer's disclosure to the consumer, defendant has no obligation under the statute to provide a consumer's report to potential creditors. (See 15 U.S.C. § 1681g).

### III.  CONCLUSION

For the reasons stated above, plaintiff's Motion for Partial Summary Judgment (Dkt. #58) is denied; Defendant's Motion for Summary Judgment (Dkt. #65) is denied without prejudice as moot; Defendant's Amended and Supplemental Motion for Summary Judgment (Dkt. #72) is granted; Plaintiff's Motion to Strike Love Affidavits (Dkt. #76) is denied; and Plaintiff's Motion for Permission to Supplement His Reply in Support of Summary Judgment (Dkt. #89) is denied.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** FED. R. CIV. P. 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second**

---

[24]In his brief in opposition to defendant's motion, plaintiff also contends that defendant's motion and supporting papers rely "extensively on inadmissible settlement negotiations"; thus, plaintiff requests that the Court disregard any references to settlement, except to the extent that they reveal defendant was put on notice and punitive damages are an order. (Dkt. #79, at 6-7).  The Court has addressed this issue in Section II.A. supra.

**Circuit).**

Dated at New Haven, Connecticut, this 7th day of June 2004.


_____/s/_____
Joan Glazer Margolis
United States Magistrate Judge