IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM SPECTOR, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:03CV00253 (JBA) |
| | ) | |
| v. | ) | |
| | ) | |
| EQUIFAX INFORMATION SERVICES, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | JUNE 8, 2004 |

**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
MOTION FOR LEAVE TO FILE DECISION OF JUNE 2, 2004 AS
SUPPLEMENTAL AUTHORITY IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Equifax Information Services LLC ("Equifax") hereby requests that it be

permitted to supplement its motion for summary judgment with the June 2, 2004 decision

issued by Judge Burns in the case of Rachel Spector v. Experian Information Services, Inc.,

*et al*, United States District Court for the District of Connecticut, Case No. 3:01-CV-1955

(EBB).  A copy of this decision is attached hereto as Exhibit "A".  As grounds for this

motion, Defendant Equifax states as follows:

1.      Judge Burns' decision was issued on June 2, 2004.  Equifax's counsel only

learned of the decision today.

2.      Just as in the present case, the decision involves a claim under the Fair Credit

Reporting Act and is directly relevant to the issues presented in Equifax's motion for

summary judgment.  Specifically, in the Rachel Spector case, the plaintiff claimed that as a

result of Wachovia's violation of the FCRA, she suffered "emotional distress, pain and suffering" which included "undue stress and heart break and sleeplessness, a lot of unnecessary paperwork and, most of all, damaging [her] credit." (Decision, p. 7). The Court held that "plaintiff's mental anguish, on its own, without evidence of a denial of credit or of any third parties viewing or relying on the information Wachovia provided regarding the status of her credit card, is not enough to survive summary judgment." (Decision, p. 20).

3.    In the present case, Plaintiff's damages claim are even more tenuous than those brought by his wife in her case and Equifax submits that it is entitled to summary judgment as a result.

WHEREFORE, Defendant Equifax requests that its motion be granted.

Respectfully submitted,

EQUIFAX INFORMATION
SERVICES, LLC

By _____

Eric D. Daniels (ct 01582)
Jason M. Kuselias (ct 20293)
ROBINSON & COLE LLP
280 Trumbull Street
One Commercial Plaza
Hartford, CT  06103-3697
E-mail:  edaniels@rc.com
E-mail:  jkuselias@rc.com
Tel. No. (860) 275-8200
Fax No. (860) 275-8299

and, of counsel

J. Anthony Love, Esq.
Georgia Bar No. 459155
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309
E-mail:  ToLove@kilstock.com
Tel. No. (404) 815-6500

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been hand delivered, on the 8th day of

June, 2004 to:

> Attorney Joanne S. Faulkner
> 123 Avon Street
> New Haven, CT  06511-2422

Jason M. Kuselias

4

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

JUN 2  3 11 PM '04
DISTRICT COURT
NEW HAVEN, CONN.

RACHEL SPECTOR,           :
       Plaintiff         :        NO. 3:01-CV-1955(EBB)
                         :
    v.                   :
                         :
EXPERIAN INFORMATION SERVICES :
INC. ET. AL.             :
       Defendants        :

## INTRODUCTION

Plaintiff Rachel Spector ("plaintiff" or "Spector") brings
this action against defendant Wachovia Bank Card Services for
violating the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681
et seq., the Connecticut Unfair Trade Practices Act ("CUTPA"),
Conn. Gen. Stat. §42-11a et seq., the Consumer Credit Reports
Act ("CCRA"), Conn. Gen. Stat. §36a-695, common law negligence,
and the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §1691.
Plaintiff alleges that Wachovia violated the FCRA for failing to
comply with its obligations to properly investigate her consumer
dispute, and now moves for partial summary judgment as to the
FCRA claim.  In response, Wachovia has cross-moved for summary
judgment.  For the reasons set forth below, the court grants
defendant's motion for summary judgment and denies plaintiff's
partial motion for summary judgment as moot.

## BACKGROUND

The Court sets forth only those facts deemed necessary to an
understanding of the issues raised in, and decision rendered on,

this Motion. The facts are culled from the parties' Local Rule
56(a) Statements, affidavits, and the exhibits attached to their
respective memoranda.

In March, 2001, plaintiff's Husband, Dr. William Spector,
filed a Chapter 7 bankruptcy and received a discharge in June,
2001. One of the accounts Dr. Spector listed and discharged in
bankruptcy was a Wachovia credit card account. Dr. Spector has
maintained a Wachovia credit card account since 1992. When he
applied for the card, he requested that his wife be included as
an authorized user of the Wachovia card. (Affidavit of William
Spector at ¶5). The account was opened on or about January 26,
1993. (Declaration of Scheuerman at 1). Currently in dispute is
whether plaintiff was merely an authorized user or an actual co-
obligor of the Account. Plaintiff and her husband assert that
she was only an authorized user of the account. However, on the
Schedule F of his bankruptcy petition, Dr. Spector checked the
co-debtor box next to his Wachovia Account. (Dkt. No. 98). In
addition, on Schedule H, Dr. Spector listed his wife, the
plaintiff, as a co-debtor for four creditors, including Wachovia
Bank. (Id.) Defendant Wachovia has not been able to verify how
or precisely when plaintiff's status changed in their records
from authorized user to a co-obligor, due to the fact that
Wachovia sold all of its consumer credit card accounts to First
USA Bank in or about July 2001. As a result, they are no longer

2

in possession of many documents and records concerning
plaintiff's credit card account.  In addition, Wachovia converted
its computer system in 1998, making old data inaccessible.  Most
of the employees that worked for Wachovia in their credit
services department are also no longer employed with the company.
Therefore, there is no direct evidence on the record regarding
the manner in which plaintiff's status on the account was changed
from authorized user to joint-obligor status.  Mr. Scheuerman, a
Senior Vice President of Wachovia from 1991 to 2002, explained in
his affidavit various ways in which plaintiff's account holder
status could have changed according to regular business practices
at Wachovia.  For example, he explained that plaintiff could have
become a co-obligor during a solicitation of a promotion or
during a balance transfer. Scheuerman clarified that because
plaintiff was an authorized user of the account, Wachovia was
authorized to adjust her status to that of joint obligor over the
phone without any paperwork.  (Declaration of Michael Scheuerman
at 6).

     Wachovia was able to access plaintiff's year-end account
records by accessing the master year-end backup files for
plaintiff's account from 1993 - 2001. (Affidavit of Tim
Huffstetler at 3).. The 1993 year-end file reflects that
plaintiff's status in December, 1993 was recorded as a joint-
obligor to the account.  Wachovia also possessed plaintiff's

                                  3

social security number at the same time, which, according to Mr.
Scheuerman, is further indication that she was an obligor of the
account because it was the ordinary business practice of Wachovia
to request only the social security numbers of individuals who
agreed to obligate themselves on an account. (Declaration of
Michael Scheuerman at 3). Defendant also produced a May, 1995
Wachovia credit card bill in the name of both William B. Spector
and Rachel S. Spector. (Declaration of Michael Scheuerman, Exh.
B). According to Mr. Scheuerman, Wachovia's regular practice is
to direct statements only to those individuals who were obligated
on an account, and that neither plaintiff nor her husband ever
objected to the bills being addressed to both of them. (Id. at
¶16).

In 2001, after her husband filed for bankruptcy, plaintiff
complained to three consumer reporting agencies, Equifax,
Experian and Trans Union, that her credit report was inaccurate
as a result of Wachovia providing allegedly false information to
these agencies. (Pl.'s Affidavit). Plaintiff claims that
Wachovia incorrectly reported the credit card as an individual
account and that the account debt was included in a bankruptcy.
Experian issued credit reports in April, May, July, November and
December 2001, listing the status of all of plaintiff's credit
cards, including her Wachovia account. Under the
"Responsibility" category the report states that the Wachovia

4

account is "individual," and under "Status Details" the report
indicates, "Status: Petition for Chapter 7 Bankruptcy/Past due
120 days."

Plaintiff alleges that Wachovia did not properly investigate
her consumer disputes or report to credit bureaus the results of
investigating her disputes as obligated under the FCRA, because
it did not change either the bankruptcy status or the individual
responsibility notation on the report. (Pl's Local Rule 56(a)2
statement.) The record reflects that in May of 2001, Wachovia
received two Automated Consumer Dispute Verifications (ACDV) from
Experian Information Solutions and Trans Union regarding
plaintiff's claim that she was not a co-obligor on the account.
After receiving such notice, Wachovia confirmed to Trans Union
"verified as reported" and to Experian and Equifax, the notation
"Debt included in Bankruptcy Chapter 7." (Pl.'s 56(a)(1)
Statement at 2; Responses to First Set of Interrogatories by
Defendant Wachovia Bank Card Services at 1-2; Defendant's Local
56(a)(2) Statement). Again in or around December 11, 2001,
Wachovia provided Experian with an ACDV Response Activity Report
which indicated that "debt was included in bankruptcy."
(Affidavit of Wilhelmina Strawther, at ¶16, 29). Wachovia
asserts that the verification only pertains to plaintiff's
dispute regarding her status as a co-obligor, and denies ever
listing plaintiff's credit card as an individual account or

5

verifying to Experian that the credit card was an individual account. (Def.'s 56(a)(2) Statement at 3). Mr. Scheureman also attests that he is unaware of any industry practice of reading credit reports that would cause a creditor to assume that plaintiff, a joint obligor on the Wachovia account, had herself filed bankruptcy, based on the notation that "debt was included in bankruptcy." (Declaration of Michael Scheuerman at ¶ 9-13).

Because Wachovia sold its credit card services to First Union in July, 2001, no employee can testify as to the precise steps taken by Wachovia to investigate plaintiff's dispute. Mr. Scheuerman described the ordinary business procedures taken to investigate consumer disputes by the Consumer Dispute Verification (CDV) Unit, and avers that there is no reason to believe Wachovia deviated from this practice with respect to plaintiff's dispute. (Declaration of Michael Scheuerman at 3-5). Wachovia's normal business practice is to review all available account records and account notes, which are recordings of occurrences of account activity on particular dates entered into the computer at the approximate time of the account activity. Id. To verify an individual's account status, Wachovia's normal business practice is to refer to the "credit association" of the particular individual, which identifies the individual's obligation or status on the account, and whether Wachovia possessed the individual's social security number. The account

6

notes on plaintiff's account reflected that plaintiff had been
designated a credit association of "2", which is an indicator
that she was jointly obligated on the Account.  The account notes
also included plaintiff's social security number, which would
indicate to an investigating employee that the individual was an
obligor on the account.  (Id. at 3).  Based on the information in
the account and the account notes, Mr. Scheuerman averred that
"an employee reviewing Wachovia's regularly maintained business
records upon receipt of Plaintiff's dispute would have reasonably
concluded that the plaintiff had become a co-obligor on the
account at some point after the initial application...[and that]
the Account balance was a debt that was included in the
bankruptcy.")  (Id. at 5).

        While admitting that Wachovia followed its "usual
procedures" in investigating her complaint, plaintiff asserts
that such procedures were "utterly inadequate" and caused her
emotional distress, pain and suffering.  Plaintiff does not
allege actual economic loss as a result of Wachovia's conduct,
but charges that she suffered "undue stress and heart break and
sleeplessness, a lot of unnecessary paperwork and, most of all,
damaging [her] credit."  (Pl.'s Deposition at 90).  Plaintiff
could not, however, verify that the information in dispute on her
report has adversely affected her credit rating or that anyone
thought the plaintiff herself had filed bankruptcy as a result of

                                7

Wachovia's reporting her credit card debt was involved in a
bankruptcy. (Id. at 40) Plaintiff was denied a Best Buy
Visa/MasterCard she applied for while in a Best Buy store in the
spring of 2002. However, she was given instead a Best Buy Credit
Card which allowed her to buy the item she went to the store to
purchase. (Id. at 42-47). Plaintiff also paid off the credit
card debt within the first six months and, therefore, was not
charged any interest. (Id. at 45). Plaintiff was not told the
reason she was only given a Best Buy credit card and not a Best
Buy Visa/MasterCard other than that the latter was denied. Id.
at 48. At the time of her deposition, plaintiff had not
attempted to apply for any other forms of credit since July of
2001. (Id. at 47).

<u>Legal Analysis</u>

I. Cross Motions to Strike

As an initial matter, the parties have cross moved to strike
affidavits submitted in support of their respective motions for
summary judgment. The principles concerning admissibility of
evidence do not change on a motion for summary judgment. <u>Raskin
v. Wyatt Co.</u>, 125 F.3d 55, 66 (2d Cir. 1997); <u>Newport Elecs. v.
Newport Corp.</u>, 157 F. Supp.2d 202, 208 (D.Conn. 2001).
Accordingly, a motion to strike is appropriate if documents
submitted in support of a motion for summary judgment contain
inadmissible hearsay or conclusory statements, are incomplete, or

8

have not been properly authenticated. *See, e.g.* <u>Hollander v.</u>
<u>American Cyanamid Co.</u>, 999 F. Supp. 252, 255-56 (D.Conn. 1998);
<u>Dedyo v. Baker Engineering New York, Inc.</u>, 1998 U.S. Dist. LEXIS
132, 1998 WL 9376 at *4 (S.D.N.Y. 1998).

       A. **Plaintiff's Motion to Strike Declarations by Huffstetler**
          **and Scheuerman**

       Plaintiff moves to strike the declarations of Tim
Huffstetler and Michael Scheuerman, two Wachovia employees, as
inadmissible under Fed. R. Civ. P. 56(e).  Tim Huffstetler, the
Senior Manager in the Systems Development Group of Wachovia,
signed a sworn declaration explaining how he retrieved a back-up
master file of plaintiff's year-end Account reports at Wachovia.
(Declaration of Tim Huffstetler at 1-2).  He did so based on his
"personal knowledge" of Wachovia and "technical familiarity with
the practices and procedure of Wachovia's information systems."
(<u>Id.</u>) Plaintiff asserts that, because this file was retrieved
after litigation began, it is therefore inadmissible in court
because it was "prepared for litigation" in violation of Fed. R.
Civ. P. 56(e).  (Mem. In support of Pl.'s Motion to Strike at 1).
In contradistinction, this court finds the declaration of Tim
Huffstetler explaining how he recovered the year-end account
reports from Wachovia's computer system are statements regarding
business records kept in the ordinary course of business, and
therefore his testimony and the documents are admissible under

                                 9

Fed. R. Evid. 803(6).  The mere fact that the records were
retrieved from a complex computer storage system after the
litigation began does not make these records documents prepared
for litigation.  Furthermore, this court finds, as Senior Manager
of Systems Development at Wachovia, Huffstetler is qualified to
speak as to the purpose and operation of the backup master file
system, and did not make speculative statements by explaining his
understanding of how and why Wachovia maintains this back-up file
system.

   This court also rejects plaintiff's challenge to
declarations made by Michael Scheuerman, the Senior Vice
President of Wachovia during the time of the events in question.
Mr.  Scheuerman described the regular business practices of
Wachovia with respect to investigating consumer disputes and the
maintenance of account notes of an account with joint obligor
status.  Mr Scheuerman also explained the notes that had been
recorded with respect to plaintiff's account, indicating Wachovia
had designated plaintiff as jointly obligated on her husband's
account.  The declarations of Scheuerman and Huffstetler, high
ranking employees of Wachovia, provide a sufficient basis for
finding personal knowledge and competence to testify regarding
the general business practices and procedures of Wachovia under
Fed. R. Civ. P. 56(e).  Therefore, such declarations are
admissible

                              10

for purposes of these summary judgment motions.

### B. Defendant's Motion to Strike Plaintiff's Affidavits

Defendant moves to strike portions of Plaintiff's affidavit
submitted in support of her motion for partial summary judgment,
on the grounds that it contains hearsay and vague statements, as
well as references to documents not identified in the affidavit.
Hearsay is a statement, other than one made by the declarant,
offered in evidence to prove the truth of the matter asserted.
Fed. R. Evid. 801(c). Hearsay testimony that would not be
admissible if testified to at trial may not properly be set forth
in a Rule 56 affidavit accompanying a summary judgment motion. H.
Sand & Co., Inc. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir.
1991). Paragraphs Two and Eight of plaintiff's affidavit make
references that she "learned" and "confirmed" information
regarding her credit reports, but do not identify the source of
her information. Paragraph Eight also states that "I also
learned that Wachovia did not respond to my disputes at all."
(Pl.'s Affidavit at 2). Similarly, Paragraph Seven states that
Experian, one of the credit bureaus and previously a co-defendant
in this lawsuit, "confirmed" that Wachovia had verified disputed
information. While this court agrees that plaintiff's affidavit
is inartfully drafted, these statements are not hearsay because
they are relied on only as evidence of what was said or reported

11

to plaintiff, not as evidence of the truth of any statement or
record made. Fed. R. Civ. P. 801(c); New York v. St. Francis
Hosp., 94 F. Supp. 2d 423, 428 (S.D.N.Y. 2000). Further, because
she has also submitted supporting evidence including credit
reports and an affidavit from a Custodian of records at Experian,
this court relies primarily on the evidence on the record with
respect to what information was reported and verified.

Defendant Wachovia also moves to strike Paragraphs Three and
Five of plaintiff's affidavit pursuant to Fed. R. Evid. 1002
because she makes a reference to "reports" without specifying the
particular documents or submitting them as evidence. In her
affidavit, paragraph three states that "[t]he adverse information
included reports that my 'individual' accounts had been
discharged in bankruptcy." Paragraph five states that "In 2001, I
disputed the items which included the false adverse information
with all three major credit bureaus." (Dkt. #84). While these
statements may be vague taken on their own, when read in
connection with the copies of plaintiff's credit report and
consumer dispute verification paperwork submitted with her
affidavit, the reference to the report is clarified. Further,
the Best Evidence rule, Fed. R. Evid. 1002, does not apply
because plaintiff's statement is not an attempt to prove the
content of a writing. See Dean v. New York Marriott Fin. Ctr.
Hotel & Marriott Int'l, 1998 U.S. Dist. LEXIS 13957, 12-13 (U.S.

12

Dist. , 1998)   Accordingly, this court finds these statements admissible for consideration on summary judgment.  However, plaintiff's statements as to the contents of these reports will be disregarded to the extent that they contradict what the records themselves reveal.  Defendant's Motion to Strike is therefore denied in its entirety.

## II. Summary Judgment

### A. The Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). *See also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, (1986)(plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).  If the moving party meets its burden of identifying those portions of the record that it believes demonstrate the absence of genuine issues of material fact, "the non-moving party must, under Federal Rule of Civil Procedure 56, demonstrate to the court the existence of a genuine issue of material fact." Lendino v. Trans Union Credit Info. Co., 970 F.2d 1110, 1112 (2d Cir. 1992).

To meet its burden and avoid summary judgment, the nonmoving party "must come forward with affirmative evidence showing a

13

genuine issue of material fact exists for trial." Chandra Corp.
v. Val-Ex, Inc., No.99-9061, 2001 WL 669252, at *2 (S.D.N.Y. Jun.
14, 2002) (citing Celotex v. Catrett, 477 U.S. 317, 324 (1986)).
The court is mandated to "resolve all ambiguities and draw all
inferences in favor of the nonmoving party...." Aldrich v.
Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2nd. Cir.), cert.
denied 502 U.S. 849 (1991). "Only when reasonable minds could not
differ as to the import of the evidence is summary judgment
proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d. Cir.), cert.
denied, 502 U.S. 849 (1991).

   "[T]he mere existence of some alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that
there be no genuine issue of material fact...Only disputes over
facts that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary
judgment. Factual disputes that are irrelevant or unnecessary
will not be counted." Liberty Lobby, Inc., 477 U.S. at 247-48.
(emphasis in original). Nonetheless, summary judgment is
improper if there is any evidence in the record from any source
from which a reasonable inference could be drawn in favor of the
nonmoving party. Chambers v. TRM Copy Centers Corp., 43 F.3d 29,
37 (2d Cir. 1994). The Second Circuit has repeatedly noted that
"[a]s a general rule, all ambiguities and inferences to be drawn

14

from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." Brady v. Town of Colchester, 863 F.2d 205, 210 (2d Cir. 1988) (internal citations omitted) citing Celotex v. Catrett, 477 U.S. at 330, n.2 (Brennan, J., dissenting) and Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59(1970)); Cartier v. Lussier, 955 F.2d 841, 845 (2d Cir. 1992). When examining the record before it to see if there are any genuine issues of material fact, this court's focus is on issue finding, not on issue-resolution. The district court's role is not to resolve disputed issues of fact itself, but rather to see if there are issues of fact to be resolved by the fact-finder at trial. See Liberty Lobby, Inc., 477 U.S. at 249.

        B. Standard Applied

    The FCRA imposes a duty on entities responsible for furnishing information to consumer reporting agencies following the receipt of notice of a dispute over the accuracy of information provided by that furnisher to the consumer reporting agency. 15 U.S.C. § 1681s-2(b) states that, after receiving notice of a dispute from a consumer reporting agency under 15 U.S.C. § 1681(a)(2), the furnisher shall:

    (A) conduct an investigation with respect to the disputed
        information;

                            15

(B) review all relevant information provided by the consumer
reporting agency pursuant to section 1681i(a)(2) of this
title;

(C) report the results of the investigation to the consumer
reporting agency; and

(D) if the investigation finds that the information is
incomplete or inaccurate, report those results to all other
consumer reporting agencies to which the person furnished
the information and that compile and maintain files on
consumers on a nationwide basis.

Plaintiff claims that defendant Wachovia is liable under 15
U.S.C. § 1681o, for negligently failing to comply with 15 U.S.C.
§ 1681s-2(b), or under 15 U.S.C. § 1681n, for willful non-
compliance with 15 U.S.C. § 1681s-2(b). This court addresses both
claims below.

### 1. Negligent Failure to Comply with FCRA

15 U.S.C. § 1681o provides:

Any person who is negligent in failing to comply
with any requirement imposed under this sub-chapter
with respect to any consumer is liable to that consumer
in an amount equal to the sum of (1) any actual damages
sustained by the consumer as a result of the failure;
(2) in the case of any successful action to enforce any
liability under this section, the costs of the action
together with reasonable attorneys fees as determined
by the court.

In order to survive a summary judgment motion on a claim of
negligent violation of the FCRA, a plaintiff must provide some
evidence from which a reasonable fact-finder could conclude that
she suffered actual damages as a result of defendant's actions.
See McMillan v. Experian, 170 F. Supp. 2d 278, 284 (D. Conn.

16

2001).

Defendant Wachovia cross-moved for summary judgment based on
the fact that plaintiff has failed to come forward with evidence
of actual damages caused by Wachovia's alleged negligent or
willful noncompliance.  Because Wachovia points to the absence of
such evidence, the burden therefore shifts to the non-moving
plaintiff to demonstrate the existence of a material factual
dispute as to the existence of damages.  See Celotex, 477 U.S. at
323-24; LaBounty v. Coughlin, 137 F.3d 68, 72 (2d Cir. 1998).
This court finds plaintiff failed to meet her burden of proving
she has sustained damages as a result of Wachovia's indication
that her credit card account was part of a bankruptcy proceeding.

Preliminarily, this court rejects plaintiff's contention
that the question of damages is "inconsequential because
emotional distress is recoverable, as are punitive damages."
(Pl.'s Local Rule 56(a)2 Statement).  While plaintiff is correct
that damages under FCRA "may include humiliation and mental
distress even in the absence of out-of-pocket expenses," the
Second Circuit has placed clear limitations on a plaintiff's
ability to recover for pain and suffering when no economic harm
is alleged.  In Casella v. Equifax Credit Info. Servs., 56 F.3d
469, 474-475 (2d Cir. 1995), the Court affirmed the district
court's finding that the plaintiff was not entitled to pain and
suffering damages because he had failed to show that his

17

emotional distress was caused by the defendant, as opposed to other creditors or credit bureau companies. *See also* <u>McMillan v. Experian</u>, 170 F. Supp. 2d at 286 ("Casella stands for the proposition that recovery under the FCRA for pain and suffering is precluded where the plaintiff cannot show that a creditor was aware of the inaccurate information, because mere knowledge by a plaintiff of potentially damaging credit information is insufficient FCRA damages.").

Even interpreting the record in favor of the plaintiff, she has not submitted any evidence that she suffered any economic loss as a result of the conduct of Wachovia. Plaintiff attempted to show that other creditors "saw the inaccurate report after Wachovia's investigation" by citing to the Affidavit of Wilhelmina Strawther, a custodian of records for the Consumer Affairs Special Services Department of Experian. However, the portions of Strawther's affidavit plaintiff points to demonstrate that Experian's records show a company by the name of Cohoes Fashions received a plaintiff's credit report on March 15, 2000. (Affidavit of Strawther at 6). This credit check therefore occurred a year before Dr. Spector filed for Bankruptcy and before plaintiff disputed the alleged inaccuracy on her account, and therefore any emotional damage caused by such inquiry cannot have been caused by Wachovia's alleged failure to adequately investigate and respond to plaintiff's consumer dispute.

18

Plaintiff also provides this court with no information with
respect to Cohoes Fashion, failing to show what information this
company received, how they interpreted such reports, and whether
Cohoes Fashions relied on any allegedly inaccurate information
from Wachovia.

When asked specifically in her deposition whether she could
identify anybody who, she was aware, had read the phrase
"included in bankruptcy" on her credit report as meaning that she
herself had filed bankruptcy, plaintiff was unable to identify
anyone. (Pl.'s Deposition at 38-9). Further, the only denial of
financial services plaintiff could point to was when she
attempted to sign up for a Best Buy MasterCard/Visa while
shopping at Best Buy in the Spring of 2002. (Id. at 42).
Plaintiff explained that, while she was not given a Best Buy
Visa/MasterCard card, she was given a Best Buy credit card which
allowed her to buy the items she had intended to buy that day.
Plaintiff could not recall the reason she had been denied the
Visa/MasterCard, or whether anything led her to believe that she
had been denied credit because of something Wachovia had done.
She received no information about what type of credit report they
relied on, if any.[1] (Id. at 85). Finally, plaintiff stated at

_____

[1] Plaintiff brought similar claims against numerous other
credit reporting agencies and financial institutions alleging
they falsely reported her credit information. Plaintiff has
submitted no evidence that Best Buy relied on information
Wachovia provided, as opposed to any of the numerous other

19

her deposition that she did not recall applying for any other forms of credit aside from the Best Buy Card since the dispute over her Wachovia card arose. This court finds plaintiff's mental anguish, on its own, without evidence of a denial of credit or of any third parties viewing or relying on the information Wachovia provided regarding the status of her credit card, is not enough to survive summary judgment. Compare McMillan v. Experian, 170 F. Supp. 2d 278, 285 (D. Conn. 2001)(denying summary judgment on damages issue because a reasonable jury could conclude that a denial of insurance resulted from misinformation supplied by the defendant) and Spector v. Trans Union LLC First USA Bank, N.A., 301 F. Supp. 2d 231, 2004 U.S. Dist. LEXIS 1386 (D. Conn. 2004)(finding summary judgment inappropriate because evidence was submitted that creditors were aware of alleged inaccurate information). This court therefore concludes that plaintiff failed to adduce any evidence of actual damages sustained as a result of defendant's activities, as required by FCRA, and summary judgment is granted for defendant Wachovia.

Because the court has found that plaintiff failed to meet her burden of proving damages as required by the FCRA, it is unnecessary to address the issue of whether Wachovia was indeed negligently non-compliant for failing to change plaintiff's

---

financial institutions which reported the same information as Wachovia. See Spector v. Trans Union LLC, 301 F. Supp. 2d 231 (D. Conn. 2004).

20

status on her credit report as a co-obligor and erase all information pertaining to her husband's bankruptcy filing.

## II. Willful Non-compliance

Plaintiff has also failed to present any evidence of willful noncompliance with any provision of the FCRA. See 15 U.S.C. § 1681n. Under the FCRA, "any person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . such amount of punitive damages as the court may allow." 15 U.S.C. § 1681n. Plaintiff is correct that punitive damages may be available even where a plaintiff has sustained no actual damages. See 15 U.S.C. § 1681n(2); Casella, 56 F.3d at 476; Boothe v. TRW Credit Data, 557 F. Supp. 66, 71-72 (S.D.N.Y. 1982). However, to survive summary judgment on a willful non-compliance claim, a plaintiff must set forth affirmative evidence demonstrating "conscious disregard" or "deliberate and purposeful" actions necessary to make out a claim for willful noncompliance under the FCRA. 56 F.3d at 476 (quoting Pinner v. Schmidt, 805 F.2d 1258, 1263 (2d Cir. 1986)("[i]n each case where punitive damages have been allowed the defendant's conduct involved willful misrepresentations or concealments.") Based on the record before this court, there is no evidence that Wachovia engaged in deliberate or reckless conduct that would warrant

21

punitive damages.  In fact, plaintiff admits that "Wachovia followed its normal procedure in responding to plaintiff's dispute and has no information indicative of any departure from normal procedures." (Pl.'s Rule 56(a)(1) Statement). Accordingly, summary judgment is also granted in favor of defendants on plaintiff's claim of willful non-compliance.

### Conclusion

Plaintiff's Motion to Strike Declarations [Dkt. No. 100] is Denied.  Defendant's Motion to Strike Affidavit  [Dkt. No. 91] is Denied.  Defendant's Cross Motion for Summary Judgment on the FCRA claim is granted [Dkt. No. 93] and Plaintiff's Partial Motion for Summary Judgment against Wachovia [Dkt. No. 81] is denied as moot.


SO ORDERED



/ELLEN BREE BURNS
SENIOR UNITED STATES DISTRICT JUDGE


Dated at New Haven, Connecticut this _2_ day of June, 2004.

22