UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM SPECTOR

v.  CASE NO. 3:03CV 253 (JBA) (JGM)

EQUIFAX INFORMATION SERVICES, LLC   June 22, 2004

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDED RULING**

Introduction

Pursuant to the Fair Credit Reporting Act (FCRA), Equifax, a "consumer reporting agency" (commonly known as a credit bureau) *must* give the consumer a copy of his consumer disclosure (commonly referred to as a credit report) either upon request, or if he has been denied credit on the basis of the credit bureau's report. 15 U.S.C. §1681g (upon request); §1681j(b) (after adverse action notice). Plaintiff asked for his credit file in December 2002 and May 2003 due to adverse action. Equifax received plaintiff's requests, but did not respond by giving plaintiff a copy of his credit file – at least twice. Moreover, Equifax admits repeated notice on January 9, 2003, and Feb. 3, 2003, that plaintiff had requested his file in December and not received it. Love Affs. Ex. D ¶¶ 2, 5; Doc. No. 73 ¶¶3, 6. Yet, Equifax still did not provide plaintiff his file. Plaintiff's counsel directly repeated plaintiff's request for his file yet again, on Feb. 13, 2003. "Please see that a copy of his credit report is sent to him, not to you or to me." Love Aff. Doc. No. 73 ¶7. This repeat of plaintiff's request also went unheeded.

A potential lender had tried to pull plaintiff's credit report electronically, but got this uninformative response:

****REFERRED FILE – CONTACT CBI CREDIT REPORTING CENTER TO GET THE FILE ****

with no indication of who CBI Reporting Center is or how to contact it.

Both of plaintiff's direct requests for his credit file were derailed instead of being provided, because of Equifax's clandestine (not disclosed to the consumer), unwritten, irrational, retaliatory, unique,[1] and self-serving policy of taking a consumer's file offline when he sues Equifax. Plaintiff's file had been taken offline when he sued Equifax for impermissibly allowing access to his credit file for account reviews even though the users had no account with plaintiff. Spector v. Equifax, Civil No. 3:02CV 870 (GLG).  In response to a direct request "State all reasons for taking plaintiff's credit file offline" Equifax said, "Equifax places a consumer's file off-line upon receipt of a lawsuit by the consumer in order to protect both Equifax and the consumer in relation to alleged inaccurate information contained within the file. Once the consumer verifies to Equifax that the contents of the file are accurate (assuming, of course, that any additional disputes have been reinvestigated), then the file is placed back on-line."  The reasoning does not apply to plaintiff, who had not challenged the accuracy of the contents of his file in the prior suit, yet Magistrate Judge Margolis denied plaintiff's motion to compel an answer as to *this* plaintiff.  Ruling on Pending Discovery Motions (Doc. No. 36) at 3.

There is no possible rational basis for taking *this* plaintiff's file offline – resulting in Equifax's failure and deliberate refusal to provide his file --  which raises a jury question as to both the reasonableness of the offline procedure generally and Equifax's reckless indifference for the purpose of punitive damages.

---

[1] Experian does not take a consumer's file offline because he will inevitably be denied credit. Recommended Ruling n. 22.

I.      THE RECOMMENDED RULING PROPERLY FOUND NEGLIGENCE

The FCRA mandates that Equifax disclose his consumer file to plaintiff. Equifax, due to its longstanding offline policy, repeatedly did not comply. Section 1681g(a) states, "Every consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title [proper identification], clearly and accurately disclose to the consumer. . . ." Section 1681j also uses mandatory language ("shall") in describing when the credit bureau must give free disclosures, including subsection (b), applicable here:

> Each consumer reporting agency that maintains a file on a consumer shall make all disclosures pursuant to section 1681g of this title without charge to the consumer if, not later than 60 days after receipt by such consumer of a notification pursuant to section 1681m of this title [adverse action notice], or of a notification from a debt collection agency affiliated with that consumer reporting agency stating that the consumer's credit rating may be or has been adversely affected, the consumer makes a request under section 1681g of this title.

Equifax ultimately–after the close of discovery -- admitted having received both of the plaintiff's requests and admittedly did not disclose plaintiff's consumer file to him either time.   The Magistrate Judge properly ruled that Equifax was negligent. Mandatory disclosure of their files to consumers is central to the purposes of the FCRA. It enables the consumer to dispute the completeness or accuracy of his report, which consequently mandates the credit bureau  -- and the furnisher – to investigate and correct his report. §§1681i; 1681s-2(b). See McMillan v. Experian Inf. Servs., Inc., 119 F.Supp.2d 84 (D. Conn. 2000).  Equifax's failure to provide plaintiff with a copy of his disclosure – five times -- not only flies in the face of the purpose of the FCRA  to insure accurate reporting,  but is also the opposite of "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The consumer is in the best position to know whether his credit file is

accurate. Equifax obstructs the consumer's efforts to obtain and correct his credit file, and blocks his access to credit when the consumer has sued it. Even after being sued for not providing his disclosure in December upon request, Equifax continued to disregard its statutory duty, by not providing it in May.

II.  ACTUAL DAMAGES FOR NOT DISCLOSING TO THE CONSUMER DOES NOT DEPEND ON DISCLOSURE TO A THIRD PARTY

The Magistrate Judge erred when she analyzed damages under sections of the FCRA that concern errors on a consumer's file, rather than the bureau's failure to disclose his file to the consumer so he can review it for errors. Requiring third party disclosure as a condition for damages for nondisclosure to the consumer eviscerates the provision mandating disclosure to the consumer.

Congress was concerned about both accuracy and privacy in consumer reports. 15 U.S.C. § §1681. The sections mandating disclosure to the consumer on request give the consumer the right to review his private financial information before it is sold for profit by the credit bureaus. The sections also specifically enhance the bureaus' ability to comply with their grave obligation to assure maximum possible accuracy of the information they sell. §1681e(b). Being denied the fundamental ability to review and challenge the dissemination of inaccurate information is the type of "invasion of privacy" claim the FCRA is meant to supplement.

The Magistrate Judge relied on Casella v. Equifax Credit Inf. Serv., 56 F.3d 469 (2d Cir. 1995).  Mr. Casella claimed violations of §1681c (obsolete information), §1681i(c) (failure to include a dispute statement), and §1681g(a)(3)(A) (obligation to disclose recipients of the report to the consumer). Casella rejected Mr. Casella's

4

argument which "boils down to the bare contention that he is entitled to damages for pain and suffering simply because he *knew* of an inaccurate and potentially damaging item in his credit report." Casella's holding is, "[W]e do not believe a plaintiff can recover for pain and suffering when he has failed to show that any creditor or other person ever learned of the derogatory information from a credit reporting agency." Id. at 475.

That narrow basis for the Casella decision does not apply here, where plaintiff could not even get a copy of his file to review it for derogatory information. Because an entirely different claim is made here, under separate sections of the FCRA, Casella's requirement of third party disclosure as a prerequisite for damages is inapposite. Plaintiff's complaint sets forth his damages as damage to his credit reputation,[2] inability to obtain corrections in his credit report, outrage, mental anguish, embarrassment, inconvenience, and emotional distress. He unequivocally had out of pocket expenses,

---

[2] Courts have recognized that "no report" is adverse to the consumer. See Thompson v. Equifax Credit Inf. Serv., 2001 WL 34142847 (M.D. Ala. Dec. 14, 2001). There, the consumer's file was also offline and the question was whether the information provided was a "consumer report."
   It is true that in this case the information provided by Defendant could indicate several things to the purchaser of the report. For instance, it could indicate that Plaintiff has bad credit history, or it could indicate that Plaintiff does not have any good credit history. The purchaser of the report is left hanging as to whether or not to grant credit to Plaintiff. Based on information such as "FILE UNDER REVIEW," "FILE UNAVAILABLE ONLINE," and "CONTACT BUREAU," it is logical to assume that the cautious thing for the purchaser of the information to do would be to deny Plaintiff credit.

Id. at *3. See also the oral decision in Stephens v. Americredit Financial Services, Inc., Civ. No. 3:03 CV 142 (E. D. Va. 2003) (excerpt attached to Doc. No. 88), where Judge Williams stated at p. 20:
   Next, I rule as a matter of law that the Fair
   17   Credit Reporting Act requires that a notice be
   18   sent to a co-applicant, even one whose report
   19   indicated a lack of credit data, because the
   20   absence of credit data reveals a great deal about
   21   one's mode of living and general credit worthiness
   22   as set forth in 1681 a(d)(1).

The Federal Trade Commission also recognizes that a "no report" is a negative factor. Its Statements of General Policy Or Interpretations Under the Fair Credit Reporting Act, 16 C.F.R. Pt. 600 App. §615.11, mandates that a user provide an adverse action notice when there is no report.

5

which the Magistrate Judge denigrates and reduces to the postage for the second request, ignoring paper, use of equipment to produce the request, and the time for creating and mailing the requests.[3] Under Casella, plaintiff is entitled to his fees for trying to get Equifax to comply with the disclosure requirement too.

As Casella noted, actual damages "may include humiliation and mental distress, even in the absence of out-of-pocket expenses." Id. at 475. The proposition is well established, and the cases are cited with approval by Casella. E.g,, Guimond v. Trans Union Credit Inf. Co., 45 F. 3d 1329, 1333 (9th Cir. 1995) (but, contra to the Second Circuit, damages available even if consumer refrains from applying for credit); Yohay v. City of Alexandria Employees Credit Union, 827 F.2d 967, 972 (4th Cir. 1987); Thompson v. San Antonio Retail Merchants Assoc., 682 F.2d 509 (5th Cir. 1982) (despite receiving credit, damages allowed for months trying to cure the erroneous report, which happened – as often—only after suit was filed); Bryant v. TRW, Inc., 689 F.2d 72 (6th Cir. 1982) (humiliation, anxiety, embarrassment, emotional distress);[4] Millstone v. O'Hanlon Reports, Inc., 529 F.2d 829, 834-335 (8th Cir. 1976) (loss of sleep,

---

[3] .See St. Paul Fire & Marine Ins. Co. v. Updegrave, 656 P.2d 1130, 1134 (Wash. Ct. App. 1983) (consumer's damages "include the consumer's inconvenience, financial considerations such as loss of time in helping prepare the case"). Monetary loss, to be ascertainable, may be as little as a 33¢ stamp, a toll call, or gas or parking to visit an attorney. Wiginton v. Pacific Credit Corp., 634 P.2d 111 (Hawaii 1981); Shubach v. Household Finance Corp., 376 N.E.2d 140, 141 (Mass. 1979) (toll calls and travel to meet with counsel).
   Hinchliffe v. American Motors Corp., 184 Conn. 607, 612-14, 440 A.2d 810 (1981). "Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property." Id. at 614. "Adoption of the defendants' view, that ascertainable loss is equivalent to actual damages, would eviscerate the private remedy provided by CUTPA." Id. at 616. See also Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 499 (1995). Ascertainable loss does not necessitate a monetary payment. Aurigemma v. Arco Petroleum Products Co., 734 F. Supp. 1025, 1028 (D. Conn. 1990) (court refuses to address "ascertainable loss" because CUTPA does "not require a plaintiff to prove a specific amount of actual damages to make out a prima facie case").

[4] The District of Columbia Circuit Court of Appeals, not cited in Casella, held that transmission of inaccurate information to third parties is not a prerequisite to a damage claim. Stewart v. Credit Bureau, Inc., 734 F. 2d 47 (1984).

6

nervousness, frustration, mental anguish); Pinner v. Schmidt, 617 F.Supp. 341 (D.La.1985); Boothe v. TRW Credit Data, 557 F. Supp. 66 (S.D.N.Y. 1982).

Because the FCRA does not include a specific injunctive remedy (CUTPA does), Congress did not provide that the FCRA does not apply where out of pocket expenses are minimal. The Magistrate Judge's proposed damages ruling renders the FCRA provisions at issue meaningless and unenforceable.

III. THE JURY SHOULD DECIDE PUNITIVE DAMAGES

Equifax deliberately violated the FCRA, and undermined its purposes, by taking this plaintiff's file offline with no rational basis, so that neither he nor his creditors can obtain it in the same speedy, simple and direct manner available to other consumers and creditors. Even before the FCRA was amended to provide for minimum damages for willful violation, Casella recognized that punitive damages could be awarded even in the absence of out-of-pocket expenses. 15 U.S.C. § 1681n(a).

In Casella v. Equifax Credit Information Serv., 56 F.3d 469, 476 (2d Cir. 1995), the Second Circuit defined the FCRA punitive damages standard as "conscious disregard" or "deliberate and purposeful action." The Magistrate Judge erroneously applied a standard of "willful, deliberate, and intentional." In contrast, Congress used "knowingly and willfully" in §§1681q and –r; "materially and willfully" in §1681p; "malice or willful intent to injure" in §1681h(e).

Defendant's long-standing disregard for its "grave responsibilities" warrants punitive damages as a matter of law. Philbin v. Trans Union, 101 F.3d 957, 970 (3d Cir. 1996) (multiple notice of dispute sufficient to support punitive damages); Collins v.

7

Retail Credit Co., 410 F. Supp. 924, 932, 933-34 (E.D. Mich. 1976) (haphazard procedures showed indifference to accuracy); Dalton v. Capital Associated Industries, Inc., 257 F.3d 409, 418 (4th Cir. 2001) (defendant was on notice of error but disregarded it). See also Nitti 375 N.Y.S.2d at, 821 (1975) (defendant's "routine method of conducting business was in complete disregard of the requirements of the [FCRA]"). In Nitti, the court aptly commented:

> It was this very kind of contumacious conduct that Congress sought to correct. It recognized that to do so, it might be necessary to cause, and, if need be, to coerce a change in the defendant's operations in order to make it comply with the law. Congress intended to make it expensive for the defendant not to comply. This was the purpose of assessing, without limitation, punitive damages. As one commentator has observed, "Deterrent awards should be large enough to remove any financial incentive to violate the statute." (Comment, *Punitive Damages Under Federal Statutes: A Functional Analysis,* 60 Cal. L. Rev. 191, 223)

Id. at 822.

No appellate FCRA case has discussed punitive damages in the context of deliberate failure to observe very specific FCRA statutory standards, such as failure to provide the consumer disclosures upon request. However, several OSHA cases discuss failure to abide by regulations. In language applicable here, Caterpillar, Inc. v. Herman, 154 F.3d 400 (7th Cir. 1998) noted:

> Whether it was a willful violation depended on whether it resulted from a conscious disregard of the regulation, or was merely careless. United States v. Ladish Malting Co., 135 F.3d 484, 490 (7th Cir. 1998); Caterpillar Inc. v. OSHRC, 122 F.3d 437, 440 (7th Cir. 1997); McLaughlin v. Union Oil Co., 869 F.2d 1039, 1047 (7th Cir. 1989); Ensign-Bickford Co. v. OSHRC, 717 F.2d 1419, 1422 (D.C. Cir. 1983). The distinction is similar to that in tort law between recklessness and negligence, on which see, e.g., AMPAT/Midwest, Inc. v. Illinois Tool Works Inc., 896 F.2d 1035, 1041-42 (7th Cir. 1990); Saba v. Compagnie Nationale Air France, 78 F.3d 664, 668-70 (D.C. Cir. 1996). If Caterpillar (which is to say its managers or supervisors, whose knowledge, Caterpillar does not deny, is imputed to the company) knew about the violation and could have corrected it but failed to do so, then the violation was willful.

8

Id. at 402.  Earlier, Caterpillar Inc. v. OSHRC, 122 F.3d 437, 440 (7th Cir. 1997) agreed:

> An OSHA violation is willful if it is committed with intentional disregard of, or plain indifference to, the requirements of the statute. See Valdak Corp. v. O.S.H.R.C., 73 F.3d 1466, 1468 (8th Cir. 1996); Ensign-Bickford Co. v. O.S.H.R.C., 717 F.2d 1419, 1422 (D.C. Cir. 1983), certiorari denied, 466 U.S. 937 (collecting cases). A willful violation "is differentiated from other types of violations by a heightened awareness--of the illegality of the conduct or conditions--and by a state of mind-- conscious disregard or plain indifference." Secretary of Labor v. Calang Corp., 1990 WL 140086, *2 (O.S.H.R.C.) (citations omitted).

See also Valdak, 73 F.,3d at 1468 (willfulness can be proved by "plain indifference" to the Act's requirements); A.J. McNulty & Co. v. Secretary of Labor, 283 F.3d 328 (D.C. Cir. 2002):

> [W]e turn to McNulty's claim that the Commission erred in affirming as willful the Company's failure to comply with the two guardrail regulations. "Although the Act does not define the term 'willful,' courts have unanimously held that a willful violation of the Act constitutes 'an act done voluntarily with either an intentional disregard of, or plain indifference to, the Act's requirements.' " Ensign-Bickford Co. v. Occupational Health & Safety Review Comm'n, 230 U.S. App. D.C. 362, 717 F.2d 1419, 1422 (D.C. Cir. 1983) (quoting Cedar Constr. Co. v. Occupational Safety & Health Review Comm'n, 190 U.S. App. D.C. 406, 587 F.2d 1303, 1305 (D.C. Cir. 1978)). According to McNulty, the Commission may find willfulness only where the employer exhibits reckless disregard. All circuits that have considered the issue, including this one, however, have long accepted "intentional disregard or plain indifference" as the appropriate standard for willfulness within the Act's meaning.

Id. at 337-38.

There is simply no valid reason for defendant to flout the specific and prophylactic provisions of the FCRA. Absent valid reason, its acts meet the standard set in Casella and by numerous courts when faced with disregard of specific statutory obligations. Hazen Paper Co. v. Biggins, 507 U.S. 604, 617 (1993) (willful because employer either knew or showed reckless disregard for whether its conduct was

9

prohibited by ADEA statute). As the Second Circuit said in <u>Ajax Hardware Mfg. v. Industrial Plants Corp</u>., 569 F.2d 181 (2d Cir. 1977), "[T]he evidence gave rise to an inference of such conscious disregard that applicable professional standards required substantially more investigation . . . than was undertaken by Industrial, and that this inference was of sufficient strength to satisfy Ajax's burden of proof on its fraud claim." There is more than an inference of conscious disregard here. The undisputed facts mandate the conclusion of both conscious disregard and deliberate and purposeful acts pursuant to established internal policy; either standard alone suffices.

      The Magistrate Judge disregarded the inferences raised by Equifax's persistent denial that it even received the plaintiff's disclosure requests until the close of discovery, by its failure to provide the disclosure despite two requests from plaintiff and three notices/ requests from his counsel. A mistake might occur once, but this "mistake" happened twice. In fact, it happened five times. Second, the offline policy that resulted in the repeated violations was adopted intentionally. Third, Equifax was repeatedly put on notice of the disclosure request (through counsel), and still did not provide the disclosures.  Fourth, further compounding the violation is the attempt to cover up one of the violations by claiming that counsel directed a response to the plaintiff's May request even though the documents show that Equifax persistently denied even receiving the May request (until after the close of discovery). Finally, Equifax shrugs off its obligations by claiming that it makes no difference that Equifax violated the law since plaintiff got a copy of his disclosure, even if for some other reason.

Repeated failure to send plaintiff his credit report falls well below the standards required by the FCRA. It rises to the level of reckless indifference for the purpose of punitive damages. McMillan v. Equifax Credit Inf. Services, Inc., 170 F. Supp. 2d 278 (D. Conn. 2001); Dalton v. Capital Associated Industries, Inc., 257 F.3d 409, 418 (4th Cir. 2001) (defendant was on notice of error but disregarded it); Donovan v. Carls Drug Co., 703 F.2d 650, 652 (2d Cir. 1983) (an act is willful when the entity knows it is subject to a statute and its practices do not conform to the statute, except when Congress enacts a good faith defense).

At the very least, the inferences raised by the facts create a punitive damages issue for the jury to decide. E.g., Menton v. Experian Corp., 2003 WL 941388 *3 (S.D.N.Y. Mar. 6, 2003) ("[T]he issue of whether a seven-month delay constitutes an intentional failure on the part of Experian to provide a credit report 'on request' remains a 'live issue' for the purpose of assessing such [punitive] damages"); Soghomonian v. United States & Trans Union, 278 F. Supp. 2d 1151, 1162 n.9, 1173 (E.D. Cal. 2003) (punitive damages is a jury question); Crane v. Trans Union, LLC, 282 F. Supp. 2d 311, 321 (E.D. Pa. 2003) (same); Lawrence v. Trans Union LLC, 2003 WL 22992081 *5 (E.D. Pa. Dec. 11, 2003) (same); Evantash v. G.E. Capital Mortgage Services &Trans Union, 2003 WL 22844198 *8 (E. D. Pa. Nov. 25, 2003) (same).

CONCLUSION

Because the Magistrate Judge erred in applying the wrong standards to the damages questions, the Court should overrule the decision on the issue of actual damages, punitive damages, and the reasonableness of the offline procedures in favor of a jury trial as to those issues.

THE PLAINTIFF

BY____/s/ Joanne S. Faulkner___
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net

This is to certify that the foregoing and attached was mailed on June 22, 2004, postage prepaid, to:

J. Anthony Love
Kilpatrick Stockton
1100 Peachtree St #2800
Atlanta GA 30309-4530

___/s/ Joanne S. Faulkner_____
Joanne S. Faulkner

12